Donald E. HOGAN, et al., Appellant–
Respondent,

v.

ARMSTRONG WORLD INDUSTRIES,
et al., Eagle–Picher Industries,
Inc., Defendants,

Celotex Corporation, Respondent–
Appellant.

No. WD 42875

Missouri Court of Appeals,
Western District.

Feb. 25, 1992.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
March 31, 1992.

Application for Transfer Sustained
June 2, 1992.

Case Retransferred Nov. 24, 1992.

Court of Appeals Opinion Readopted
Dec. 1, 1992.

Thomas A. Sweeny, Justine E. Del Muro, Kansas City, for appellant.

David E. Larson, Kansas City, Butler, Vinews, Babb & Threadgill, Knoxville, Tenn., for respondent.

Before LOWENSTEIN, C.J., SHANGLER, P.J., and BERREY, J.

BERREY, Judge.

Appellant, Donald E. Hogan, brought suit against respondent, Celotex Corporation (Celotex) and a number of other asbestos manufacturers for personal injuries. He prevailed and the jury awarded him $252,000.00 in actual damages and $198,333.00 in punitive damages. This amount was reduced by the trial court to $33,500.00 to take into account various settlement amounts agreed upon with other asbestos manufacturers. Mr. Hogan appeals from this reduction, claiming the trial court erred in reducing the award by the settlement amounts he had not received. The reduction failed to take into account that these settlements were made by both him and his wife, S. Joan Hogan.

Celotex cross-appeals, claiming seven points of error. Specifically, Celotex claims that the trial court erred in: (1) overruling its motion for a directed verdict at the close of all evidence with respect to punitive damages as the evidence failed to prove that it had actual knowledge; (2) refusing to dismiss or hold in abeyance the punitive damage issue because the award violates the Fourteenth Amendment of the United States Constitution by denying it substantive due process; (3) overruling its

motion for a directed verdict at the close of all evidence because the evidence established that Mr. Hogan was guilty of contributory fault as a matter of law; (4) overruling its motion for a directed verdict at the close of all the evidence as Mr. Hogan's claims were barred by the statute of limitations; (5) failing to bifurcate the liability issues and the punitive damage issues for trial by the jury because the punitive damage evidence was inflammatory and prejudicial; (6) admitting certain exhibits into evidence as these exhibits were hearsay; and (7) overruling its motion for a new trial because the jury verdict was based upon a prearranged quotient formula.

Donald Hogan worked in the asbestos industry for many years. He started working summers in 1947, continuing until 1950. After a period in the Navy, Mr. Hogan began to work full time in the industry. He worked for Kelley Asbestos Company during the years 1950, 1952, 1955–1959, 1961 and 1962. While working for Kelley he used Philip Carey products. Celotex is the successor corporation to the Philip Carey Corporation. Mr. Hogan also worked for JDM Insulation (a/k/a Central Insulation) during the years 1959, 1961, 1962, 1967–1974. At JDM he used primarily Eagle–Picher products but Philip Carey and Unibestos products were also utilized in his work.

Mr. Hogan first started becoming aware of the hazards associated with asbestos in the mid–1960's. He continued his work with asbestos, but did not wear a mask or a respirator. He first experienced shortness of breath in 1974 and had some lung tests run. In early 1985 Mr. Hogan had to climb a scaffold. He experienced a shortness of breath. Upon consulting with his physician, Dr. Bownik, Mr. Hogan was diagnosed as having asbestosis. Asbestosis is a permanent condition, not treatable or curable. As a result of this disease, Mr. Hogan is totally disabled from doing work as an insulator.

Mr. Hogan filed suit against a number of asbestos manufacturers and suppliers, seeking both actual and punitive damages based on a strict liability theory. Mrs. Hogan was also a party in the action claiming a loss of her husband's companionship, society, services and consortium. The jury found in favor of Mr. Hogan on his claim against Celotex, awarding him both actual and punitive damages. A defendants' verdict was returned on the claim of Mrs. Hogan for loss of consortium. Eagle–Picher Industries, Inc., a co-defendant of Celotex was also assessed damages. Eagle–Picher is not a party to this appeal however, because it reached a settlement with Donald Hogan. Celotex appeals from the judgment in Mr. Hogan's favor.

At the time that the judgment was entered several settlements had been reached by the Hogans on their claims. The amounts of these settlements are shown in the following chart:

| | |
|---|---|
| Babcock & Wilcox | $ 2,500.00 |
| Center for Claims Resolution* | $ 75,000.00 |
| Combustion Engineering, Inc. | $ 3,500.00 |
| Pittsburg Corning Company | $ 20,000.00 |
| Owens-Illinois Corporation | $ 10,000.00 |
| Fibreboard Corporation | $ 25,000.00 |
| Johns-Mansville Settlement Trust | $ 82,500.00 |

* The Center for Claims Resolution represented GAF Corporation, Keene Corporation, Armstrong World Industries, Inc. and Turner-Newell Ltd.

At the time of the judgment, settlement monies had been received from only Babcock & Wilcox and Combustion Engineering, Inc. for a total of $6,000.00. The full amount of the settlement was deducted from Mr. Hogan's award, leaving a judgment of actual damages in the amount of $33,500.00. Mr. Hogan filed a motion to correct, amend or modify the judgment on the basis of the unpaid settlement claims. The court below overruled this motion on January 2, 1990. A motion to set aside the order of January 2, 1990 was overruled on January 8, 1990. Mr. Hogan appeals from this order.

### The Celotex Appeal

■ In its first point on appeal Celotex argues that the trial court erred in overruling its motion for a directed verdict at the close of all evidence on the issue of punitive damages because the evidence failed to establish that it had actual knowledge of the dangers of exposure to asbestos at the time Mr. Hogan was exposed to its products. The Celotex argument is twofold. Celotex argues that Mr. Hogan was unable to state specifically which asbestos products he was using during which time frames and that the evidence did not establish actual knowledge on the part of Celotex regarding the danger of its products to insulators working with those products.

These issues were addressed in a recently decided case. This court in *Angotti v. Celotex Corp.*, 812 S.W.2d 742 (Mo.App. 1991), fully explored an identical argument and concluded that, "Celotex was entitled to a directed verdict on its behalf on the issue of punitive damages." For an extensive discussion on the issues involved, the reader is directed to that case. We conclude, based on the cited authority, that Celotex lacked actual knowledge and was thus entitled to a directed verdict on the issue of punitive damages.

Celotex, in its next point, claims that the trial court erred in not dismissing or otherwise holding in abeyance the punitive damage issue because the award of punitive damages in this case violates the Fourteenth Amendment of the United States Constitution by denying Celotex substantive due process. The crux of this argument is that due process is denied by the punishing of Celotex numerous times in numerous forums for the same course of conduct with no mechanism in place to con-

trol the final outcome. Our holding in point one of this opinion makes it unnecessary to reach this issue as the award of punitive damages has been taken away from Mr. Hogan.

■ In its third point Celotex argues that the trial court should not have overruled its motion for a directed verdict at the close of all evidence because, as a matter of law, Mr. Hogan was guilty of contributory fault. The issue of contributory fault by an asbestos installer is addressed in *Angotti v. Celotex Corp.*, 812 S.W.2d 742 (Mo.App.1991). This court, citing *Harper v. NAMCO, Inc.*, 765 S.W.2d 634, 636–38 (Mo.App.1989), explains that contributory fault may be submitted by M.A.I. 32.23 as a defense in a strict products liability case. *Angotti v. Celotex Corp.*, 812 S.W.2d at 750. The test of whether a directed verdict is proper in a given case is whether reasonable and honest persons could differ on the proper outcome of the case, reviewing the evidence and all reasonable inferences drawn from that evidence in a light most favorable to the plaintiff. *Love v. Deere & Company*, 720 S.W.2d 786, 789 (Mo.App.1986).

■ This court in *Angotti* had before it the following facts: (1) William Angotti first learned in 1968 that there was danger to asbestos; (2) Mr. Angotti subscribed to the Asbestos Workers Journal; (3) Mr. Angotti continued to work with asbestos after learning that asbestosis was a possibility from exposure to asbestos, working in the industry until 1982; and (4) Mr. Angotti did not wear a mask or respirator even though some of his coworkers did. *Angotti v. Celotex Corp.*, 812 S.W.2d at 750. The court concluded that this was not enough to establish that Mr. Angotti unreasonably and voluntarily exposed himself to Celotex's asbestos products knowing and appreciating the danger to himself. *Id.* Thus, William Angotti was not guilty of contributory fault as a matter of law. In the case before us we deal with similar facts. Mr. Hogan first learned of the possible danger of asbestos in the 1960's. He continued to work in the industry and did not, at first, wear a mask, only occasionally donning a mask thereafter. As demonstrated in *Angotti*, these facts do not establish contributory fault as a matter of law and Celotex was not entitled to a directed verdict.

■ Celotex next protests that the trial court erred in failing to grant its directed verdict at the close of all evidence because Mr. Hogan's claims were barred by the statute of limitations. Celotex claims that Mr. Hogan's injury was capable of ascertainment as early as 1974, thus the five year statute of limitations had run by the filing date of the action, October 28, 1987. § 516.120, RSMo 1986. Celotex relies upon a visit made by Mr. Hogan to Menorah Medical Center where an x-ray was taken of his lungs. This x-ray was not admitted into evidence and cannot be considered in this appeal. Mr. Hogan testified that when he was discharged from the hospital he was told, "If we find anything, we'll let you know." Mr. Hogan never heard from that doctor.

The facts in this case are remarkably similar to the facts in *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434 (Mo. banc 1984). In *Elmore*, the court dealt with when a cause of action for asbestosis accrued for the plaintiff, Mr. Elmore. Mr. Elmore knew as early as 1973 that he was experiencing a shortness of breath. He also knew from reading union publications that asbestos dust caused asbestosis. *Id.* at 436. What he did not know until he was diagnosed in 1976 was that he was suffering from asbestosis. *Id.* The court held that Mr. Elmore's cause of action accrued on the date that the diagnosis was made, May 13, 1976. The court stated, "It was not until such diagnosis was made that the character of the condition (asbestosis) and its cause (breathing asbestos dust) first 'came together' for the plaintiff." *Id; See also, Kestner v. Missouri Pac. R. Co.*, 785 S.W.2d 646, 648 (Mo.App.1990).

In the instant case the only thing that differs from the facts in *Elmore* is Mr. Hogan's visit to the doctor, who it must be remembered never diagnosed asbestosis or at least never shared this diagnosis with anyone. At trial Mr. Hogan testified as to

the circumstances surrounding his visit to the doctor:

Q. (By Mr. Oliver) Do you recall being—or going to see a doctor in 1974 with regard to a persistent cough you were having, and some chest problems?

A. Yes, sir, but the cough—when I went to see the doctor, something I should have never done, I—the cough was completely gone by that time. And—I went to see the doctor anyway just to see if there was anything, you know—being as I was already scheduled to go see him, I went to see him.

Q. The doctor took a chest x-ray, didn't he?

A. I couldn't say so sir.

Q. You don't recall whether or not the doctor told you that you had a lesion on your lung that he thought might be cancerous?

A. No, sir. I—the doctor never told me I had a lesion on my lung that might be cancerous.

. . . .

A. The doctor told me, when I was discharged from the hospital, he said, "If we find anything, we'll let you know. That's the last I ever heard of that doctor. I never received any correspondence from him whatsoever.

The x-ray that Celotex relies upon was not admitted into evidence. Testimony by plaintiff's witness, Dr. Schlozman, that Mr. Hogan had a pleural effusion in 1974 consistent with asbestos exposure was based upon a review of Mr. Hogan's history, with the benefit of hindsight. There is no evidence that the condition was ascertainable in 1974 except for these conclusions. As in *Elmore*, the condition and its cause did not come together for Mr. Hogan until he was diagnosed in 1985. This is the date that begins the limitations period and thus, this action is not time-barred.

Even assuming *arguendo* that there was a fact issue as to when the time period began, when the injury was ascertainable, Celotex did not present the issue to the jury for its consideration. The court in *Hopkins v. Goose Creek Land Company, Inc.*, 673 S.W.2d 465, 469 (Mo.App.1984), in looking at a question concerning a statute of limitations defense stated:

Because contradictory conclusions may be drawn from the evidence, the running of the statute of limitations was a jury question. Defendant offered no instruction on this affirmative defense. "Failure to request such an instruction constitutes an abandonment of that affirmative defense even though the statute of limitations is affirmatively pleaded. *Yeager v. Wittels*, 517 S.W.2d 457, 465–466[11] (Mo.App.1974).

Celotex's Point IV is denied.

■ Celotex, in its fifth point, argues that the trial court abused its discretion in failing to bifurcate the liability issues and the punitive damage issues for trial by jury because the punitive damage evidence was inflammatory and prejudicial. This same argument was made in *Angotti v. Celotex Corp.*, 812 S.W.2d at 751. This court rejected Celotex's argument which was based on § 510.263, RSMo Supp.1990, pointing out that § 510.263 was not applicable because the effective date of that legislation is July 1, 1987, which is after the cause accrued. Furthermore, this section would still submit both the issues of liability of punitive and actual damages in the first stage of the proceeding. Upon a jury determination that a defendant is liable for punitive damages the issue is then passed to a second hearing to determine the amount. For the reasons given by this court in *Angotti*, this point is denied.

Celotex argues that the trial court erred in admitting certain exhibits because these exhibits were hearsay and/or opinion testimony not admissible pursuant to the business records exception of § 490.680, RSMo 1986. The exhibits Celotex complains of are identical to those admitted in *Angotti v. Celotex Corp.*, 812 S.W.2d at 751. The challenged exhibits were all found to be admissible in that case. *Angotti, Id.* at 762. Once again the reader is referred to *Angotti* for the reasoning this court utilized in declaring those exhibits admissible. On the authority of *Angotti*, Celotex's Point VI is denied.

In its final point, Celotex claims that the trial court erred in overruling its motion for a new trial because the verdict entered by the jury for both actual and punitive damages was based upon a prearranged quotient formula. Celotex points to affidavits made by two of the jurors stating that damages were awarded based upon a prearranged quotient formula agreed upon by the jurors before assigning dollar amounts. Celotex is attempting to impeach the verdict. This attempt violates the long established Missouri rule that the testimony of a juror is inadmissible and is not to be received in evidence for the purposes of impeachment of the verdict. *Black v. Cowan Constr. Co.*, 738 S.W.2d 617, 620 (Mo.App.1987); *Accord Baumle v. Smith*, 420 S.W.2d 341, 348 (Mo.1967); *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d at 439. There is nothing in the record which indicates any ambiguity in the verdict or that the verdict was not a true pronouncement by the jury. Accordingly, Celotex's final point is denied.

### The Donald Hogan Appeal

Mr. Hogan's sole point on appeal is that the trial court erred in reducing his actual damages by deducting settlement amounts which had not and may never be received by him and by failing to consider the share of Mrs. Hogan in the negotiated settlements. The trial court reduced Mr. Hogan's damages by the total amount of the negotiated settlements even though at the time of the reduction only $6000.00 from these settlements had been recovered. Mr. Hogan's brief contains a great deal of information not found in the record about these settlements and the probability of some of the settling companies to ever pay the negotiated sums. This evidence will be disregarded by this court and, in any event is not necessary to the determination of this issue.

Section 537.060, RSMo 1986, provides a mechanism for reducing an award of actual damages by amounts that were settled upon by other joint tortfeasors also responsible for damages and by the damaged party. The relevant portion of that statute provides:

> When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such an agreement shall not discharge any of the other tortfeasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater.

§ 537.060, RSMo 1986. The statute does not say that the award shall be reduced by the monies received, but by the stipulated amount of the agreement or the amount of the consideration paid. Missouri case law is consistent with the literal interpretation of this statutory clause. *See Elsie v. Firemaster Apparatus*, 759 S.W.2d 305, 307 (Mo.App.1988); *State ex rel. Simmerock v. Brackmann*, 714 S.W.2d 938, 942 (Mo.App. 1986).

Mr. Hogan's reliance upon MAI 7.01 is misplaced. MAI 7.01 was withdrawn in 1983, the same year that § 537.060 was amended. The language in MAI 7.01 allowing deduction of the amounts which a joint tortfeasor "has paid plaintiff," no longer made sense in light of the language of the statute mandating that the claim be reduced by "the stipulated amount of the agreement." § 537.060, RSMo 1986. Mr. Hogan also cites *Brickner v. Normandy Osteopathic Hosp., Inc.*, 746 S.W.2d 108 (Mo.App.1988), for the proposition that § 537.060, RSMo 1986 is not strictly construed where future payments are involved. In *Brickner*, however, the consideration that plaintiffs received for the dismissal of a joint tortfeasor from the action was a lump sum payment, "plus an agreement for payment of various sums at specified times over a period of years." *Id.* at 117–18. The court found that defendant was entitled to a credit in the amount of the present value of the settlement; "the amount of money needed today to generate the funds required to meet a schedule of future payments of specified amounts on specified dates." *Id.* at 118. The struc-

tured settlement valued in *Brickner* is not analogous to the settlements at issue in the instant case. The settlements we are concerned with involve specified dollar amounts and need not be reduced to present value to arrive at their worth.

A compromise settlement is a contract and as such must possess the essential elements of any other contract. *Randall v. Harmon*, 761 S.W.2d 278, 279 (Mo.App.1988). Mr. Hogan settled with these companies in contemplation of litigation. The peculiarities of asbestos litigation do not relieve a party of adherence to contract principles. Parties to a voluntary settlement cannot avoid their agreement merely because that agreement proves to be disadvantageous. *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir.1985). Mr. Hogan is, in effect, trying to avoid the terms of his agreements because they may be disadvantageous to him because of the possibility that the negotiated sums will not be paid.

Nor is Mr. Hogan's suggestion that the court assign the unpaid settlement payments to Celotex satisfactory. Such an assignment forces Celotex into the unenviable position of being made an unwilling participant in the settlement process. Contractual obligations are limited to the parties thereto and cannot be imposed upon a stranger to that contract. *Reichert v. Jerry Reece, Inc.*, 504 S.W.2d 182, 185 (Mo. App.1973). It would be unfair and inequitable for the risk of nonpayment to be transferred to Celotex where Celotex was not involved in negotiating these settlements. It is a legal truism that somewhere there must be an end to litigation. The potential for courts to get ensnared in an endless legal quagmire is high where dissatisfied parties to a settlement are allowed to void that settlement or put the onus of risk onto a stranger to the settlement. Mr. Hogan made these settlements with the knowledge of the problems inherent in asbestos litigation. Presumably the continued solvency of the companies he was bargaining with was one factor in his determination of whether or not to settle. No allegations of fraud or misdealing are found here. We will not allow Mr. Hogan the opportunity to second guess himself, thus we do not find the action of the court in allowing reduction by the total stated amount of the settlements to be error.

Mr. Hogan alleges that some percentage of the settlement monies received by both him and his wife should have been allocated to the claim of Mrs. Hogan and this portion should not be deducted from Mr. Hogan's actual damages. The settlement agreements in question are all referenced to the claims of both Mr. Hogan and his wife. No separate allocation is made in these settlements for Mrs. Hogan's claims. There is no way of telling on the face of these instruments what percentage of the monies received were to be in settlement of Mrs. Hogan's separate claim for loss of consortium.

Even though a loss of consortium claim is derivative of the injured spouse's claim, *Hale v. Firestone Tire & Rubber Co.*, 636 F.Supp. 585 (W.D.Mo.1986), *aff'd in part and rev'd in part*, 820 F.2d 928 (8th Cir.1987), it is a separate and distinct cause of action from a claim of personal injury in an asbestosis action. *Hendrix v. Raybestos–Manhattan, Inc.*, 776 F.2d 1492 (11th Cir.1985). In the trial below, Mr. Hogan was awarded actual damages on his claim, but the jury found against Mrs. Hogan. The difficulty with separating Mrs. Hogan's portion of the settlement from Mr. Hogan's portion is that there is nothing to indicate how the monies were allocated.

In determining the scope of a settlement we look to the intent of the parties ascertained from the language used and the circumstances surrounding the settlement. *Schroeder v. Dy–Tronix, Inc.*, 723 S.W.2d 934, 936 (Mo.App.1987). A settlement does not extend to matters that are not intended to be included in its terms. *Stoddard v. Wilson Freight, Inc.*, 651 S.W.2d 152, 156 (Mo.App.1983). It is impossible to determine the intent of the parties as to the separate allocations for Mr. and Mrs. Hogan's claims. The settlement was made in contemplation of foregoing litigation and there was no way of telling whether that litigation would have been

brought to a successful outcome. The potential outcomes of possible litigation must have been in the minds of the parties while in the negotiation of the settlements. The absence of an allocation of the Hogan's claims indicates the intention of treating them as indivisible. Thus the subtraction of the entire settlement amount from the award of actual damages to Mr. Hogan was not improper.

In its respondent's brief, Celotex argues for the remand of the cause for a determination of what further reduction might be in order due to the Eagle–Picher settlement. Not only does this request have its basis in matters not properly part of the record, the request was never raised until the respondent's brief and not brought up as a matter for direct appeal.

The judgment awarding punitive damages to Donald Hogan is reversed. The judgment awarding actual damages to Donald Hogan is affirmed. The action of the trial court in reducing the actual damages awarded by the full amounts of the settlements is affirmed.

All concur.