Dawn STEVENSON, Respondent,

v.

## AQUILA FOREIGN QUALIFICATIONS CORP., Appellant.

### No. WD 72214.

Missouri Court of Appeals, Western District.

Dec. 21, 2010.

---

Ronald D. Marney, David A. Schatz and Derek T. Teeter, Kansas City, MO, for appellant.

Herbert W. McIntosh, Steven L. Hobson and Gary L. Leftridge, Kansas City, MO, for respondent.

Before Division Three: ALOK AHUJA, Presiding Judge, VICTOR C. HOWARD, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Aquila Foreign Qualifications Corp. appeals from the trial court's judgment denying its motion for set-off and credit. Aquila contends that it was entitled to a set-off

pursuant to section 537.060[1] because Dawn Stevenson reached a settlement in another action for the same injuries for which she obtained a judgment against Aquila. We affirm.

### Factual and Procedural History[2]

On July 5, 2000, Stevenson was in an automobile accident (the "2000 accident") with an Aquila employee. Aquila concedes that the negligence of its employee was the sole cause of the 2000 accident. The impact of the collision was such that Stevenson's vehicle spun around three times, crossed the center line, left the roadway, returned to the roadway crossing the center line again, and then came to rest off the roadway on the opposite side. Stevenson struck her head and immediately complained of head and neck pain to the emergency personnel. Stevenson was placed in a cervical collar by the emergency medical personnel and transported to the hospital. In the months following, Stevenson sought medical treatment for numbness in her left arm, head and neck pain, and excruciating headaches.

On February 3, 2003, Stevenson was involved in another accident (the "2003 accident") when she was rear ended by Alissa Durbin, who had been rear ended by Julie Filley while stopped at a stoplight. Stevenson described this accident as minor but within a minute after the collision, she felt pain radiating up the side of her head. Stevenson was transported to the hospital from the scene by emergency medical personnel. Stevenson again sought medical treatment for head and neck pain and for numbness in her left arm. On February 23, 2003, an MRI showed that Stevenson had a herniated disc at C5–6. In July 2003, Stevenson underwent surgery to repair the herniated disc. The surgeon who performed this surgery opined that the herniated disc was caused by the 2000 accident. Stevenson's treating physician following the 2000 accident had originally diagnosed neck sprain. However at trial, after being provided with additional information from a CT scan taken three weeks after the 2000 accident, the treating physician diagnosed a "herniated disc" as a result of that accident.

On December 30, 2004, Stevenson filed her petition against Aquila seeking damages from the 2000 accident. Stevenson alleged injury "to her cervical and lumbar spine of a severe, permanent and progressive nature, and injuries to her right hip." In the Aquila lawsuit, Stevenson claimed entitlement to medical expenses associated with the July 2003 herniated disc surgery and related treatment.

After filing the suit against Aquila, Stevenson filed separate suits against Durbin and Filley. The Durbin and Filley suits were consolidated.[3] In the consolidated suit against Durbin and Filley, Stevenson sought damages for "injury to her head, neck, and chest, and ... a herniated disk at the C5–6 level of a severe, permanent and progressive nature." In interrogatory

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

2. We view the evidence and all reasonable inferences drawn in the light most favorable to the trial court's judgment and disregard all contrary evidence. *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 652 (Mo. banc 2009).

3. Although it is undisputed that Stevenson filed suit against Durbin and Filley and that the actions were consolidated, the record on appeal fails to include any file stamped pleadings from either of those actions. The only pleadings from those actions included in the legal file are the petition against Filley, which is attached as an exhibit to Aquila's suggestions in support of its motion for set-off, and Stevenson's answers to interrogatories propounded by Durbin.

responses filed in the Durbin/Filley lawsuit, Stevenson claimed injuries to her "[n]eck, chest wall and left knee"; among other things, she sought to recover as damages the medical expenses associated with the July 2003 herniated disc surgery and related treatment.

Stevenson settled with Durbin and Filley. Aquila then filed a third amended answer to Stevenson's petition to plead an additional affirmative defense. Aquila alleged that Stevenson claimed injuries to her head and neck from the 2003 accident, that Stevenson had settled her claims with Durbin and Filley from the 2003 accident, and that any award obtained against Aquila should be reduced by Stevenson's settlement with Filley and Durbin.[4]

The Aquila lawsuit was tried by a jury on January 25–29, 2010. Stevenson requested a judgment of $600,000 for damages including medical bills of approximately $60,000, lost wages, future value of lost wages, and loss of enjoyment of life. The jury found in favor of Stevenson but awarded her only $65,000. On February 16, 2010, Aquila filed a post-trial motion for set-off and credit seeking to reduce the judgment by the amount of Stevenson's settlement with Durbin and Filley. The motion was denied by the trial court. The trial court entered judgment for Stevenson in the amount of $65,000. Aquila appeals.

## Standard of Review

The sole issue on appeal relates to the trial court's refusal to reduce the judgment entered for Stevenson by the amount of the settlement with Durbin and Filley. We will affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

We defer to the trial court on factual issues and view the evidence and all reasonable inferences drawn there from in the light most favorable to the trial court's judgment, disregarding all contrary evidence. *Essex Contracting, Inc.*, 277 S.W.3d at 652. However, we independently evaluate whether the trial court properly declared or applied the law to the facts presented. *Mo. Land Dev. Specialties, LLC v. Concord Excavating Co., L.L.C.*, 269 S.W.3d 489, 496 (Mo.App. E.D.2008).

■ The trial court denied Aquila's motion for set-off without a hearing and did not issue any findings of fact or conclusions of law. In the absence of findings of fact or conclusions of law, an appellate court assumes that the trial court resolved all issues of fact in accordance with the result reached. *State ex rel. Mo. Highways and Transp. Comm'n v. Muslet*, 213 S.W.3d 96, 98 (Mo.App. W.D.2006).

## Analysis

In its sole point relied on, Aquila contends that the trial court erred in denying its motion for set-off and credit because Stevenson settled her claims against Filley and Durbin for the "same injuries" for which she obtained a judgment against Aquila, entitling Aquila to a set-off or cred-

---

4. Aquila contends that Stevenson entered into a settlement agreement with Filley and Durbin but cites only to Stevenson's motion in limine to support that fact. The motion in limine does not provide any details of the settlement. Aquila concedes that the amount of the settlement is unknown but "based on information and belief" believes the settlement amount was $50,000. A copy of the settlement agreement was unsuccessfully sought by Aquila during discovery. However, Aquila has not claimed error on this appeal associated with the trial court's apparent refusal to permit that discovery.

it against the judgment under section 537.060. We disagree.

■ Section 537.060 provides in part:

When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the *same injury* or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater.

(Emphasis added.) A credit pursuant to section 537.060 "is similar in nature to the common law defense of satisfaction." *Walihan v. St. Louis–Clayton Orthopedic Grp., Inc.,* 849 S.W.2d 177, 180 (Mo.App. E.D.1993).

Section 537.060 does not alter, but rather implements the common law rule that a plaintiff is entitled to only one satisfaction for the *same wrong.* Accordingly, the receipt of full satisfaction from either tortfeasor for the wrong *for which both are liable* would bar plaintiff's recovery from the other for the *same injury.* Further, when the injured plaintiff settles with one of the tortfeasors for a portion of the wrong *for which each is liable,* 'the injured person still retains her cause of action against the other tort-feasors and recovery may be had for the balance of the injury.'

*Id.* (citations omitted) (emphasis added). Thus, section 537.060 codifies a subset of the common law defense of satisfaction. However, by its terms, section 537.060 does not apply unless the predicate condition—multiple tortfeasors being liable for the same injury—is established.

■ As Aquila notes in its brief, the predicate condition to application of section 537.060 is established when an injury is caused by joint tortfeasors, referring to defendants whose alleged tortious conduct causes injury to the plaintiff in the same transaction of facts. *Teeter v. Mo. Highway & Transp. Comm'n,* 891 S.W.2d 817, 820 (Mo. banc 1995) (two defendants sued for wrongful death arising from the same automobile collision); *Elsie v. Firemaster Apparatus,* 759 S.W.2d 305, 307 (Mo.App. E.D.1988) (three defendants liable for personal injuries sustained in the same automobile collision). These cases demonstrate that "same injury" refers to a scenario where the same transaction of facts causes an injury that is "indivisible" with respect to the relative culpability of the multiple tortfeasors contributing to same. "Same injury" is, therefore, synonymous with "indivisible injury."

■ The predicate for application of section 537.060 is also established in the rare case where technically "independent" torts occur under circumstances making it impossible to differentiate which injuries were caused by which defendant, rendering the tortfeasors joint and the injuries "indivisible." In *Barlow v. Thornhill,* 537 S.W.2d 412, 414–15 (Mo. banc 1976), plaintiff filed one action against two defendants as the result of two rear end collisions that occurred at the same location *within ten to fifteen minutes* of each other. Plaintiff's physician testified that he could not attribute the injuries to either collision and that plaintiff's injuries were caused by both collisions. *Id.* at 415. In finding that the ten to fifteen minutes between the collisions did not preclude the application of the indivisible injury rule, the Supreme Court stated:

The gist of the rule with respect to injuries is not so much the time separating the collisions as it is the *impossibility of definitely attributing a specific injury to each collision.* Each case

**926**

must be judged in the circumstances of the case.

*Id.* at 419 (emphasis added). *Barlow* thus does not stray from construing "same injury" as an indivisible injury caused by a single transaction of facts. Barlow simply recognizes that in the rare case, two technically independent events are essentially a single transaction of facts causing an indivisible injury because there is insufficient intervening time between the occurrences to permit any other conclusion.

■ Aquila relies on *Brown v. Kneibert Clinic,* 871 S.W.2d 2 (Mo.App. E.D.1993), to argue that section 537.060 applies not just to joint tortfeasors but broadly to injuries to the same part of the body caused by *independent* tortfeasors. Aquila's reliance is misplaced. In *Brown,* plaintiff brought a malpractice action against a clinic that performed a surgical procedure during which a medical instrument broke, perforating the plaintiff's colon. 871 S.W.2d at 3. The verdict against the clinic was reduced by the amount of the plaintiff's settlement with the manufacturer of the medical instrument. *Id.* at 4. The Eastern District noted that the clinic and the manufacturer committed "separate" torts. *Id.* at 3. However, that observation did not mean that the manufacturer and the clinic were independent (as opposed to joint) tortfeasors. In fact, all joint tortfeasors necessarily commit "separate" torts. What makes "separate" tortfeasors "joint tortfeasors," however, is the commission of the "separate" torts *in a single transaction of facts.* That is precisely what occurred in *Brown.* The "separate torts" of the clinic and the manufac-

turer coalesced in a single transaction of facts to cause an indivisible injury-a perforated colon. *Id.* As a result, the manufacturer and the clinic may have committed technically separate torts, but they were legally joint tortfeasors. Thus, section 537.060 applied to require the plaintiff's settlement with the manufacturer of the medical device to be credited against the verdict against the clinic. *Brown* does not stand for the proposition that where independent tortfeasors cause a plaintiff similar injuries, section 537.060 will apply as a matter of law to require a credit in the event of settlement with one of the tortfeasors. As in *Barlow, Brown* does not stray from treating "same injury" as an indivisible injury caused by a single transaction of facts.

■ Aquila is not a joint tortfeasor in this case.[5] The 2000 accident and the 2003 accident were not a single transaction of facts and did not occur so close in time as to permit the conclusion that the accidents were essentially the same transaction of facts as in *Barlow.* In fact, Aquila concedes that the injuries Stevenson sustained from the 2000 and the 2003 accidents are not completely identical.[6] However, Aquila nonetheless maintains that because Stevenson *claimed* in her separate lawsuits that her neck and back injuries were sustained in each accident, section 537.060 requires a credit against the judgment for the amount Stevenson received in settlement from Durbin and Filley. We disagree.

■ "Same injury" as that term is employed in section 537.060 does not turn on a plaintiff's bare assertion of causation

---

5. Durbin and Filley were joint tortfeasors with respect to the 2003 accident. However, they were not joint tortfeasors with Aquila for the 2000 accident, and Aquila was not a joint tortfeasor with Durbin and Filley for the 2003 accident.

6. Stevenson claimed neck and back injuries from all three defendants but claimed right hip injuries from only Aquila, and head, chest and left knee injuries from only Durbin and Filley.

but on whether the plaintiff's injury was, in fact, caused by a single transaction of facts as to render the injury indivisible and subject to joint liability among multiple tortfeasors.[7] A credit pursuant to section 537.060:

> is not appropriate ... when the injuries involved *are not the same.* Thus, where *separate torts result in both an original injury and an aggravation thereof,* such as when a physician negligently treats the original injury, the successive tortfeasor, e.g., the physician, is not liable for the underlying injury and is only responsible for the harm flowing from his own negligence.

*Walihan,* 849 S.W.2d at 180 (emphasis added).

The logic of this construction of section 537.060 is revealed in cases where a trial proceeds against *independent* tortfeasors who have caused a plaintiff similar and/or aggravated injuries. In *State ex rel. Retherford v. Corcoran,* 643 S.W.2d 844, 845 (Mo.App. E.D.1982), a plaintiff instituted a single action to litigate three separate automobile accidents. Because there were three separate accidents, the defendants were not joint tortfeasors but were independent and successive tortfeasors. The action alleged that the plaintiff's injuries, which included aggravation and re-injury to the same parts of the body, could not be allocated between the three accidents. *Id.* The Eastern District held that the plaintiff had the burden to establish the injuries that were caused by each defendant. *Id.* at 846. The Court stated that damages that include aggravation of preexisting conditions:

> may create proof problems in differentiating the severity of injuries attributable

to each accident. But difficulty of proof does not create joint liability for these independent and unrelated torts. Each defendant has liability for, and only liability for, the injuries sustained by plaintiff as a result of that defendant's accident.... *There is no common liability among the defendants* ....

*Id.* at 846–47 (emphasis added). *See also State ex rel. Jinkerson v. Koehr,* 826 S.W.2d 346 (Mo. banc 1992) (holding that each defendant is responsible only for the injuries the defendant caused where a plaintiff was involved in two separate accidents occurring almost a year apart).

Similarly, in *State ex rel. Nixon v. Dally,* 248 S.W.3d 615 (Mo. banc 2008), a plaintiff was involved in two separate rear end collisions occurring ten months apart. *Id.* at 615–16. The plaintiff filed one action against both defendants. *Id.* at 616. The evidence indicated that first accident was the primary trigger while the second accident aggravated the prior injury and added symptoms. *Id.* The Supreme Court held that although joinder of both defendants in a single action was proper, joinder did not mean that the defendants were joint and severally liable. *Id.* at 618 n. 4. The Supreme Court stated that each defendant would only be liable for the damages each separately caused. *Id.* The Supreme Court thus held that joint liability is inappropriate where the defendants are independent and successive tortfeasors. *Id.*

These cases reveal that although a plaintiff may *allege* his injuries are attributable to multiple independent tortfeasors, the plaintiff will not be able to recover for the same injuries from each independent tortfeasor and will, instead, have the burden of

---

**7.** We discuss, *infra,* that the common law defense of satisfaction can apply if a plaintiff is compensated for an injury or damage from one independent tortfeasor then seeks compensation for the same injury or damage from another independent tortfeasor. Such a scenario is not, however, encompassed within the scope of section 537.060.

proving causation between each tortfeasor's culpable conduct and the injuries actually caused by that conduct. In other words, these cases reveal that a mere *claim* that multiple independent tortfeasors caused a plaintiff's injury does not establish joint liability for the injury. It follows that a mere claim that multiple independent tortfeasors caused the plaintiff's injury does not trigger the application of section 537.060 should the plaintiff settle with one of the independent tortfeasors.

■ In light of the foregoing discussion, we conclude that a non-settling tortfeasor who claims a settlement affords a right to reduction under section 537.060 bears the burden of proving it had joint liability with the settling tortfeasor, a burden which is not met by the fact a plaintiff has merely *claimed* joint liability. If joint liability does not legally exist, then section 537.060 does not apply, notwithstanding a plaintiff's assertions attributing responsibility for the same injury to multiple independent tortfeasors.[8] Aquila did not meet this burden. Aquila was not jointly liable with Durbin and Filley for Stevenson's neck and back injuries. Though Stevenson did not file a single lawsuit against Aquila, Durbin, and Filley, had she done so, she would have been unable to secure a joint judgment against all three of the defendants for the entirety of her neck and back injuries. Instead, Stevenson would have been required to establish the neck and back injuries *that were caused by each accident.* As such, Stevenson's mere claim in the two separate lawsuits she filed that her neck and back injuries were caused by each accident was insufficient to trigger the application of section 537.060.

The manner in which this case was tried and instructed is consistent with our conclusion. At trial, the jury heard about both accidents and about the claimed injuries sustained in both accidents. Evidence of the treatment that Stevenson received following both accidents was presented through testimony and exhibits which provided the dates of treatment, the identity of treatment providers, and a description of the treatments. Notwithstanding, the jury was instructed to award Stevenson only "such sum as you believe will fairly and justly compensate [Stevenson] for any damages you believe she sustained and is reasonably certain to sustain in the future *that the collision with [Aquila] directly caused or directly contributed to cause.*" This instruction is completely consistent with Stevenson's obligation as described in *Retherford* and *Nixon* to establish which injuries or damages she sustained as a result of the 2000 accident. Aquila had and took every opportunity during trial to contest causation between Stevenson's claimed injuries and the 2000 accident and to attempt to attribute Stevenson's claimed injuries to the 2003 accident. Certainly, Aquila did not believe it was jointly liable for any injuries Stevenson sustained from the 2003 accident. Aquila cannot be heard, therefore, to complain that the trial court failed to give it the benefit of a reduction of plaintiff's judgment pursuant

---

8. A plaintiff may allege multiple tortfeasors are liable for the same injury or damage because the plaintiff is not sure which of the multiple tortfeasors will be determined by a finder of fact to be liable for the injury. To be clear, however, once a plaintiff has in fact recovered for an injury or damage from an independent tortfeasor (as opposed to a contractually liable entity subject to the collateral source rule), the plaintiff will not be able to recover for that same injury or damage again from a different independent tortfeasor. The prohibition against double recovery in the case of independent tortfeasors is not, however, addressed in section 537.060 but remains within the scope of the broader common law defense of satisfaction, as we discuss, *infra*.

to section 537.060 when the necessary predicate for the application of that statute—joint liability—did not exist.

Having rejected Aquila's contention that section 537.060 applied to this case, we also reject Aquila's reliance on *Hogan v. Armstrong World Industries,* 840 S.W.2d 230 (Mo.App. W.D.1992), for the proposition that Stevenson had the burden to prove that her settlement with Durbin and Filley did not compensate her for amounts she was awarded by the judgment in the Aquila lawsuit. In *Hogan,* Donald Hogan asserted product liability claims against several asbestos manufacturers for personal injuries he suffered as a result of exposure to asbestos. *Id.* at 232. Mr. Hogan's wife asserted claims for loss of consortium. *Id.* In causes of action relating to asbestos, common law joint and several liability applies. *Sofie v. Fibreboard Corp.,* 780 P.2d 260 (Wash.1989). Thus, as the multiple tortfeasors in *Hogan* were joint tortfeasors, section 537.060 applied. Mr. Hogan and his wife settled with several of the jointly liable defendants prior to trial. *Hogan,* 840 S.W.2d at 232–33. The settlements did not allocate the amounts paid to the separate claims of Mr. and Mrs. Hogan. *Id.* at 237. A jury subsequently entered a verdict in favor of Mr. Hogan but against Ms. Hogan following a trial with a non-settling tortfeasor. *Id.* at 232. The trial court reduced Mr. Hogan's verdict by the amount of the pretrial settlements paid to Mr. and Mrs. Hogan. *Id.* at 233. On appeal, Mr. Hogan claimed that some of the settlement payments should have been allocated to his wife's claim for loss of consortium. *Id.* at 237. This court disagreed, finding that it was "impossible to determine the intent of the parties as to the separate allocations [of the settlement amounts] for Mr. and Mrs. Hogan's claims." *Id.* This court thus held that the collective settlement of Mr. and Mrs. Hogan's claims without allocation "indicates the intention of treating [the separate claims] as indivisible." *Id.* at 238.

*Hogan* only applies where joint liability exists and where a credit under section 537.060 is thus required. *Hogan* simply holds that where plaintiffs with separate claims settle with a joint tortfeasor without allocating the settlement amongst their separate claims, the court will treat the separate claims as an "indivisible claim" for purposes of affording credit against a later judgment under section 537.060. *See Walihan,* 849 S.W.2d at 181–82 (noting that, in *Hogan,* "the defendants were jointly liable for all claims brought by husband and wife," holding *Hogan* inapplicable in case "involve[ing] separate injuries resulting from successive torts"). *Hogan* does not stand for the proposition that a settlement between a plaintiff and an independent tortfeasor must allocate the purpose for the settlement payments in order to prevent the settlement from being credited against a later judgment involving another independent tortfeasor. As we discuss, *infra,* such an interpretation of *Hogan* would improperly shift the burden to prove the affirmative defense of satisfaction from a defendant to the plaintiff.

Although section 537.060 did not apply to this case, Aquila was not foreclosed from demonstrating that Stevenson received a "double recovery" outside the scope of section 537.060 but within the remaining parameters of the common law defense of satisfaction. As noted in *Walihan,* "[s]ection 537.060 does not alter, but rather implements the common law rule that a plaintiff is entitled to only one satisfaction for the same wrong." 849 S.W.2d at 180. As "satisfaction" is an affirmative defense, Aquila bore the burden to plead *and prove* that the settlement between Stevenson and Durbin and Filley compensated Stevenson for an injury or damage included within the judgment entered

against Aquila. *Norman v. Wright,* 100 S.W.3d 783, 785 (Mo. banc 2003).

■ Aquila clearly pled the affirmative defense of satisfaction. In order to prove the affirmative defense of satisfaction, Aquila was required to prove that Stevenson double recovered. In other words, Aquila was required to prove an overlap between: (i) the injuries or damages Durbin, Filley, and Stevenson intended their settlement to cover, *and* (ii) the injuries or damages the jury included in the judgment entered against Aquila. Aquila failed to do either of these things.

■ We realize Aquila unsuccessfully sought discovery regarding Stevenson's settlement. In the ordinary case, the details of a settlement with an independent tortfeasor could be viewed as beyond the permissible bounds of discovery as there should be no overlap in a plaintiff's recoveries given the absence of joint liability. However, where a plaintiff expressly alleges a right to recover for the exact same injury or damage from independent tortfeasors, as Stevenson did in this case, the non-settling independent tortfeasor should be permitted to conduct *limited* discovery regarding the details of a settlement with the other tortfeasor. Otherwise, the non-settling independent tortfeasor is deprived access to evidence necessary to prove the affirmative defense of satisfaction. We are not suggesting a plaintiff who settles with an independent tortfeasor has any obligation to allocate the settlement in order to avoid a presumption of double recovery. We are merely saying that under certain narrow circumstances, where a plaintiff has expressly created the prospect of double recovery by the plaintiff's assertion that multiple independent tortfeasors are liable for the exact same injury or damage, a non-settling independent tortfeasor should be permitted to determine through *limited* discovery whether a settlement with an independent tortfeasor bears any attributes which would permit a fact finder to conclude how the settling parties intended the settlement to be allocated.

Aquila has not expressly claimed in this appeal that the trial court erred in denying it access to discovery regarding Stevenson's settlement. However, Aquila asks us to remand this case to permit it to conduct the discovery necessary to support its defense of satisfaction. We decline to do so. Even had Aquila been afforded the right to conduct discovery regarding Stevenson's settlement, Aquila would have been unable to sustain its burden to prove the defense of satisfaction.

Stevenson asked the jury in the Aquila lawsuit to return a verdict of $600,000. Stevenson put on evidence of medical expenses approximating $60,000. The jury returned a verdict of $65,000. Aquila did nothing to permit the trial court to assess what the jury's general verdict was intended to compensate.[9] As a result, even had there been evidence about the injuries or damages the Durbin/Filley settlement was intended to compensate, the trial court would have been unable to determine whether the jury's verdict compensated Stevenson for the same injuries or damages. Aquila "failed to meet its burden, '[a]s the party asserting the affirmative defense [of satisfaction] ... to *posture* the case to ensure that the trial court could apply its defense.'" *Ozark Air Lines, Inc. v. Valley Oil Co., L.L.C.,* 239 S.W.3d 140, 145 (Mo.App. W.D.2007) (quoting *Kansas City Power & Light Co. v. Bibb & Assocs.,*

---

9. Aquila could, for example, have requested special damage interrogatories as a part of the jury instructions.

*Inc.*, 197 S.W.3d 147, 157 (Mo.App. W.D. 2006)).

### Conclusion

We affirm the trial court's judgment.

All concur.