Charmin GIBSON,
Plaintiff/Respondent,

v.

The CITY OF ST. LOUIS, City of St. Louis Water Department, and City of St. Louis Street Department, Defendants/Appellants.

No. ED 95949.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 20, 2011.

Michael A. Garvin, Craig K. Higgins, Patricia Hageman, City Counselor, St. Louis, MO, for appellants.

Jamie L. Boock, Amanda L. Bosky, Rossiter & Boock, LLC, St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Presiding Judge.

The defendant city appeals from that part of a personal injury judgment against it denying its motion pursuant to section 537.060 RSMo (2000)[1] to reduce the judgment by the amount of plaintiff's settlement of a medical malpractice lawsuit that had sought damages from the negligent treatment of one of plaintiff's injuries from the accident. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Charmin Gibson, was injured in a single vehicle accident on December 24, 2007, in the City of St. Louis, when her vehicle allegedly struck ice that had formed on the roadway due to a broken water main or fire hydrant owned by the City of St. Louis. Plaintiff suffered multiple injuries as a result of the accident, including a comminuted fracture of her right femur, which required surgical repair and a permanent rod; a fracture of her right tibial plateau; a fracture of her C7 facet joints, which required that she wear a rigid neck brace for six weeks; multiple lacerations and abrasions to her face, which required sutures; and a laceration to her earlobe, which also required sutures. She was treated at Barnes–Jewish Hospital for her injuries.

Plaintiff filed a lawsuit against the City of St. Louis, City of St. Louis Water De-

---

1. All further statutory references are to RSMo (2000), unless otherwise indicated.

partment, and City of St. Louis Street Department (hereinafter, collectively, "the City") to recover damages for the injuries she suffered in the automobile accident. The City filed an answer and alleged affirmative defenses.

While her lawsuit against the City was pending, plaintiff filed a lawsuit against Barnes–Jewish Hospital and Washington University (hereinafter, collectively, "the medical malpractice defendants") to recover damages arising out of the negligent rotation of her right femur, which had been fractured in the automobile accident. Plaintiff subsequently settled this lawsuit for $80,000.00. The settlement released the medical malpractice defendants and all other persons and entities from liability related to injuries and damages claimed in the medical malpractice lawsuit, but it expressly reserved plaintiff's right to pursue her remaining damages against the City for her original injuries:

> Releasor reserves the right to pursue further claims against the City of Louis, City of St. Louis Water Department and/or City of St. Louis Street Department as is more fully set out in [the lawsuit against the City] but Releasor agrees and understands that she is not and will not seek as damages in [the lawsuit against the City] those injuries and damages which Releasor has claimed in [the medical malpractice lawsuit]. Releasor specifically releases, ac-

quits and forever discharges the Releasees, Released Parties, and all other persons and entities from any and all liability related to the injuries and damages claimed in [the medical malpractice lawsuit].

■ On the first day of trial in plaintiff's lawsuit against the City, the City filed a "Motion to Apply Set-off" pursuant to section 537.060.[2] It alleged that it was entitled to a "set-off" of $80,000.00, the amount of plaintiff's settlement with the medical malpractice defendants, because the City was potentially liable for the aggravation of the original injury.

During trial, the subject of medical malpractice evidence arose on two occasions. The first occasion involved the exclusion of evidence. During the video deposition of Timothy M. Farley, M.D., the assistant city counselor asked Dr. Farley which specific problems had caused plaintiff to see him, and Dr. Farley responded that plaintiff's foot "had rotated out." Plaintiff's counsel objected, stating that he had not covered that topic on direct and that he had limited his evidence of future problems to general problems with femur fractures. The assistant city counselor then rephrased his questions to avoid testimony on rotation. At trial, before the video deposition was played to the jury, plaintiff objected to Dr. Farley's answer about the

---

**2.** The parties use the term "set-off" in discussing the reduction under section 537.060. However, this reduction is not a set off.

A defendant who pleads a setoff occupies substantially the position of a plaintiff and must have a subsisting demand which would afford the subject matter for a cause of action. A setoff or counterclaim has the nature and effect of an independent action by the defendant against the plaintiff. Set-off is generally founded on a liquidated debt and used to discharge or reduce plaintiff's claim by an opposite claim arising from a

transaction extrinsic to the plaintiff's cause of action.

*Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 129 (Mo. banc 1985) (citations omitted). Thus, a "set off" (also denominated "setoff" or "set-off") is an independent claim and not an affirmative defense. Specifically, "set off" is not the affirmative defense of reduction by satisfaction that is codified in section 537.060. *See Walihan v. St. Louis–Clayton Orthopedic Grp., Inc.*, 849 S.W.2d 177, 179 n. 2 (Mo.App. 1993).

foot being rotated, and the trial court sustained the objection.

The second occasion occurred during plaintiff's direct examination when her attorney asked her if she currently had any problems with respect to aches or pain in her right leg. The assistant city counselor asked to approach the bench, where the following discussion took place:

MR. HIGGINS [Assistant City Counselor]: It was my understanding that we were doing good up until we were going to start talking about present complications, and I was fine with it up until she started talking about physical therapy thing. But I think now when we get into problems talking about pain and aching, that definitely is crossing the line as to what our understanding is how it affects the issues of the medical mal case that we're keeping out. Because obviously—

THE COURT: She can talk about the pain that she has but nothing more.

MR. BOOCK [Plaintiffs Attorney]: That's right. That's why I said any pain. That's all she's going to say.

MR. HIGGINS: I didn't know where it was going.

THE COURT: That's where it ended, with the doctor's deposition—

MR. BOOCK: Yeah.

THE COURT:—with the pain.

MR. BOOCK: Correct.

THE COURT: But nothing about future treatment.

MR. HIGGINS: Okay.

(The proceedings returned to open court.)

Q (By Mr. Boock:) We were talking about current problems in terms of achiness or pain that you may have with regard to your right leg. Do you have some of that today?

A. I have pain in my right let off and on. I usually just have it when it's really cold or when it's going to rain, my leg just feels kind of sore from my hip into the middle of my thigh. ·

At trial, plaintiff did not testify further about any current or permanent problems with her right leg. Plaintiff did not introduce any evidence about the negligent treatment of her fractured femur, her claim against or settlement with the medical malpractice defendants, or any pain, suffering, or physical problems caused by the medical malpractice. The assistant city counselor did not make any other objection during trial that evidence relating to the malpractice claim was being introduced.

The jury returned a verdict in plaintiff's favor, awarding her $106,000.00 in damages and apportioning the City's fault at 60%. The trial court entered judgment against the City in the net amount of $63,600.00. After trial, the trial court held a hearing on the section 537.060 motion, at which time the parties also filed legal memoranda. The trial court subsequently entered an order denying the motion. The City appeals.

## DISCUSSION

For its sole point on appeal, the City contends that the trial court erred in denying its section 557.060 motion because multiple tortfeasors were liable for the same injury, and plaintiff's injuries were indivisible and stemmed from a single transaction of facts. We disagree.

### Standard of Review

Both parties have briefed the issues on appeal pursuant to the standard of review set out in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We note that the Western District also has used this standard of review in an appeal from a determination under section 537.060. *See Ste-*

*venson v. Aquila Foreign Qualifications Corp.*, 326 S.W.3d 920, 924 (Mo.App.2010). Ordinarily, this is the standard of review for court-tried cases, which this was not. On the other hand, this district has held that the standard of review in these cases is abuse of discretion. *See CADCO, Inc. v. Fleetwood Enters., Inc.*, 220 S.W.3d 426, 440 (Mo.App.2007). Given this situation, the standard of review requires clarification.

■■■ We start by considering the procedure that leads to a ruling under section 537.060. A reduction under section 537.060 is an affirmative defense that must be pleaded and proved.[3] *Norman v. Wright*, 100 S.W.3d 783, 785 (Mo. banc 2003) (overruling *Julien v. St. Louis Univ.*, 10 S.W.3d 150, 152 (Mo.App.1999), to the extent inconsistent); Rule 55.01. When the issues relating to prior settlement payments are undisputed, the proper procedure is as follows:

> [T]he parties should make a record out of the hearing of the jury regarding undisputed prior settlement payments made either as an advancement by the defendant or as a partial settlement payment by a joint tort-feasor. The trial judge, as a matter of law, then will take any prior payments into consideration and will credit them on the damages assessed by the jury's verdict as required by law.

MAI 1.06 Committee Comment [1983 New]. However, if there is a disputed issue about whether there was a settlement payment, about whether a certain payment was attributable to a settlement, or about the amount of a settlement payment, "this issue is submitted to the jury by modifying the damage instruction as required by MAI 7.02 and using Form of Verdict MAI 36.19." *Id.*

In this case, no factual disputes were submitted to the jury, and the trial court ruled as a matter of law. *See, e.g., Norman*, 100 S.W.3d at 784–85. Therefore, our review in this case is de novo. *Kivland v. Columbia Orthopaedic Grp., LLP*, 331 S.W.3d 299, 311 (Mo. banc 2011).

*Analysis*

■■■ The statutory basis for the City's claim is section 537.060, which provides:

> When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the *same injury* or wrongful death, such agreement shall not discharge any of the other tortfeasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater.

Section 537.060 (emphasis added). Section 537.060 implements the common law rule that a plaintiff is entitled to one satisfaction for a wrong. *Walihan v. St. Louis–Clayton Orthopedic Grp., Inc.*, 849 S.W.2d 177, 180 (Mo.App.1993). Under common

---

**3.** The City alleged as an affirmative defense that it was "entitled to a set-off of all settlements and judgments from all parties and nonparties who may be liable for the incident as alleged by plaintiff" without providing a statement of facts or any reference to section 537.060. However, plaintiff did not challenge, by motion for a more particular statement, whether an affirmative defense under section 537.060 was sufficiently pleaded under Rule 55.08, thus waiving any objection. *See Eckerd v. Country Mut. Ins. Co.*, 289 S.W.3d 738, 742–43 (Mo.App.2009). In addition, the City's pretrial motion did set out the required facts, and this issue was tried by express or implied consent, which also allows us to treat the defense as though it had been properly pleaded. *See Damon Pursell Constr. Co. v. Mo. Highway & Transp. Comm'n*, 192 S.W.3d 461, 475 (Mo.App.2006) (citing Rule 55.33(b)).

law, when a "judgment for a wrong is rendered against one who is a joint tortfeasor, and the judgment is satisfied, the plaintiff cannot recover another satisfaction for the same wrong." *Beare v. Yarbrough*, 941 S.W.2d 552, 555 (Mo.App. 1997). "The term joint tortfeasor' includes a single indivisible harm caused by independent, separate, but concurring wrongful acts of two or more persons." *Id.* (citing *Brickner v. Normandy Osteopathic Hosp., Inc.*, 687 S.W.2d 910, 912 (Mo.App. banc 1985)). "An indivisible injury results when two or more causes combine to produce an injury incapable of division on any reasonable basis and each is a substantial factor in bringing about the harm." *Beare*, 941 S.W.2d at 555 (citing *McDowell v. Kawasaki Motors Corp. USA*, 799 S.W.2d 854, 861–62 (Mo.App.1990)).

■ Section 537.060, by its own terms, requires that "two or more persons [be] liable in tort for the same injury" before any reduction can be applied. " 'Same injury' as that term is employed in section 537.060 ... [turns] on whether the plaintiff's injury was, in fact, caused by a single transaction of facts as to render the injury indivisible and subject to joint liability among multiple tortfeasors." *Stevenson*, 326 S.W.3d at 926–27. A "same injury" can occur "in the rare case when technically 'independent' torts occur under [unique] circumstances[,] making it impossible to differentiate which injuries were caused by which defendant, [and] rendering the tortfeasors joint and the injuries 'indivisible.' " *Id.* at 925. Therefore, two independent torts may result in the "same injury" when it is impossible to definitely attribute a specific injury to each incident, resulting in an "indivisible injury." *Id.*

The City argues that in this case there was only one indivisible injury resulting from two acts that were part of a single transaction of facts, citing *Brown v. Knei-*

*bert Clinic*, 871 S.W.2d 2 (Mo.App.1993). *Brown* exemplifies one of the rare situations in which independent torts converged in a single transaction of facts and resulted in an indivisible injury. In *Brown*, a physician employed by the defendant medical clinic performed a polypectomy on the plaintiff during which a medical instrument broke, and the intestine was perforated twice. In the first post-procedure operation, the physician-employee repaired one perforation, but did not find the other one. In the second post-procedure operation, a second physician-employee located and repaired the other perforation. The plaintiff then developed peritonitis, requiring a third post-procedure operation. The plaintiff filed one lawsuit in which he sought damages from the medical equipment manufacturer on a products liability theory and damages from the medical clinic on a medical malpractice theory. The plaintiff settled with the medical equipment manufacturer and proceeded against the medical clinic.

We held that although the equipment manufacturer and the medical clinic performed two independent tortious acts, the result of both of these acts was "one injury" to the plaintiff, and plaintiff was only entitled to recover once for the injury resulting from both acts. *Brown*, 871 S.W.2d at 3. We affirmed the judgment that reduced the plaintiff's recovery in the malpractice case by the amount of the settlement in the products liability case.

*Stevenson* explains why *Brown* involved the "same injury:" "The 'separate torts' of the clinic and the manufacturer coalesced in a single transaction of facts to cause an indivisible injury-a perforated colon. As a result, the manufacturer and the clinic may have committed technically separate torts, but they were legally joint tortfeasors." *Stevenson*, 326 S.W.3d at 926. Therefore, in *Brown*, "section 537.060 ap-

plied to require the plaintiff's settlement with the manufacturer of the medical device to be credited against the verdict against the clinic." *Stevenson,* 326 S.W.3d at 926. *Stevenson* emphasized that "*Brown* does not stand for the proposition that where independent tortfeasors cause a plaintiff similar injuries, section 537.060 will apply as a matter of law to require a credit in the event of settlement with one of the tortfeasors." *Id.* Rather, *Stevenson* acknowledged that "*Brown* does not stray from treating 'same injury' as an indivisible injury caused by a single transaction of facts." *Id.*

In this case, in contrast to *Brown,* the City's negligence in maintaining its water mains or hydrants that caused plaintiff to be injured and the medical malpractice defendants' subsequent negligence in treating one of plaintiff's injuries were independent torts that caused separate injuries, an original injury and an aggravation thereof. When "separate torts result in both an original injury and an aggravation thereof, such as when a physician negligently treats the original injury, the successive tortfeasor, e.g., the physician, is not liable for the underlying injury and is only responsible for the harm flowing from his own negligence." *Walihan,* 849 S.W.2d at 180 (citing *State ex rel. Baldwin v. Gaertner,* 613 S.W.2d 638, 640 (Mo. banc 1981)). An original tortfeasor may be liable for any additional damages resulting from the negligent treatment of an injury by a physician, but the physician, who has played no part in causing the original injury, will be liable only for the additional harm caused by his or her own negligence in treatment. *Baldwin,* 613 S.W.2d at 640. An initial tortfeasor and a subsequently negligent physician " 'act[ ] independently of each other; their several wrongs were committed at different times; and the tort of each, being several when

committed did not become joint [merely] because its consequences united with the consequences of another.' " *State ex rel. Normandy Orthopedics, Inc. v. Crandall,* 581 S.W.2d 829, 831 n. 1 (Mo. banc 1979) (quoting *Staehlin v. Hochdoerfer,* 235 S.W. 1060, 1062 (Mo.1921)). Quite simply, the initial tortfeasor and the subsequently negligent physician are " 'not joint tort-feasors.' " *Normandy,* 581 S.W.2d at 831 n. 1 (quoting *Staehlin,* 235 S.W. at 1062). Unlike the situation in *Brown,* in which the separate torts caused a perforated colon, in this case, the City's negligence caused plaintiff's injuries from the accident and the medical malpractice defendants subsequently caused plaintiff's injury from the negligent rotation of the femur.

The City's argument that there was one injury because plaintiff's pain and suffering caused by the broken femur cannot be distinguished from plaintiff's pain and suffering caused by the negligent treatment is unavailing. Although subsequent aggravation of an injury "may create proof problems in differentiating the severity of injuries attributable to each accident[,] ... difficulty of proof does not create joint liability for these independent and unrelated torts." *State ex rel. Retherford v. Corcoran,* 643 S.W.2d 844, 846 (Mo.App. 1982). In this case, the record plainly demonstrates that plaintiff was able to limit her evidence at trial to the pain and suffering resulting from the automobile accident.

All of plaintiff's evidence of pain and suffering at trial was confined to that resulting from the injuries suffered in the automobile collision. Plaintiff adduced evidence of multiple bodily injuries that were unrelated to her broken right femur. These were not the subject of her malpractice case and were not included in the malpractice settlement. None of the pain and suffering caused by these injuries was

related to the pain caused by medical malpractice. Plaintiff also adduced evidence of her broken right femur and the measures required to repair and treat the femur. These also were not the subject of her malpractice case and were not included in the malpractice settlement. At trial, plaintiff's evidence of pain from her broken right femur was specifically limited to pain that would be suffered irrespective of future malpractice.

The record confirms that the trial court and the parties were all well aware of the terms of the release and understood that evidence of medical malpractice damages would not be presented at trial. As illustrated by the objections, discussions, and rulings described in this opinion, both parties consciously avoided adducing evidence touching on the malpractice case; they raised objections to prevent the jury from hearing such evidence; and the trial court entered rulings to ensure that the jury did not hear this evidence.

In this case, the injuries were not "the same injury" as that term is used in section 537.060. When the injuries are not the same, relief under section 537.060 is not appropriate. *Walihan*, 849 S.W.2d at 180. Accordingly, the City was not entitled to have the claim against it reduced by the amount of the settlement with the medical malpractice defendants under section 537.060. The trial court did not erroneously apply the law in denying a reduction under section 537.060. Point one is denied.

*Conclusion*

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY, J. and KENNETH M. ROMINES, J., concur.