Virginia PAYNE, Respondent,

v.

Ashley L. MARKESON, Appellant.

No. WD 75771.

Missouri Court of Appeals, Western District.

Sept. 10, 2013.

Motion for Rehearing and/or Transfer to the Supreme Court Denied Oct. 29, 2013.

Application for Transfer Denied Dec. 24, 2013.

Jessica Beever, Kansas City, MO, for appellant.

John Turner, Kansas City, MO, for respondent.

Before Division Four: JAMES EDWARD WELSH, C.J., ALOK AHUJA, J., and EDITH MESSINA, Sp. J.

JAMES EDWARD WELSH, Chief Judge.

This case arises from a lawsuit filed by Virginia Payne against Ashley Markeson in which Payne sought damages for inju-

ries that she incurred in an automobile accident resulting from Markeson's driving while intoxicated. The jury found in favor of Payne and awarded compensatory and punitive damages. Markeson appeals the circuit court's denial of her motion to reduce the jury's verdict by the amount of Payne's settlement agreement with a co-defendant and the denial of her motion for remittitur as to punitive damages. We reverse and remand in part and affirm in part.

## Background

In September 2009, a vehicle being driven by Ashley Markeson crossed the centerline and collided with Virginia Payne's vehicle. Markeson, who was on probation for a prior DUI conviction, had been drinking at a bar just before the accident. At the time of the accident, Markeson's blood alcohol level was .166 (over twice the legal limit). She was charged, and she pleaded guilty to second-degree assault due to intoxication.

Payne suffered numerous injuries, including fractures to her right ankle, left femur, and right wrist. She filed a lawsuit against Markeson, alleging that Markeson was negligent in causing the accident and seeking compensatory damages for her injuries. She also sought punitive damages on the basis that Markeson's actions demonstrated conscious disregard for the safety of Payne and others.

Payne also sued MM Investments, Inc. (d/b/a Doc Holliday's) pursuant to Missouri's "Dram Shop Act," section 537.053, RSMo.[1] She alleged that MM Investments continued to serve Markeson alcohol that evening even though she was visibly intoxicated. Payne and MM Investments reached an agreement under which MM Investments agreed to pay Payne $475,000. On March 14, 2012, Payne filed a motion to dismiss her claim against MM Investments. The circuit court dismissed MM Investments on March 27th.

On May 30, 2012, Markeson filed a motion for leave to file an amended answer to include an affirmative defense for a reduction in the amount of the settlement agreement, pursuant to section 537.060, RSMo.[2] Markeson attached a copy of the amended answer that she proposed to file. She also filed a separate "Motion for Reduction or Set–Off," which set forth the amount of the settlement agreement. At a pre-trial hearing on June 15, the circuit court granted Markeson's motion for leave to file an amended answer, finding that Payne would not be prejudiced by the filing. The court denied the "Motion for Reduction or Set–Off" as moot.

A jury trial commenced on June 25, 2012, at which Payne presented evidence about Markeson's intoxicated condition at the time of the accident, about her own injuries, and about the impact the accident has had on her life. On June 27, the jury returned a verdict in favor of Payne for $350,000 in compensatory damages and concluded that Markeson was liable for punitive damages. During the punitive damages phase of trial, Markeson testified about her punishment in the related criminal case and about the dire state of her

---

1. Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2012 Cumulative Supplement.

2. Section 537.060, RSMo, permits a defendant's liability to be reduced by the amount of a settlement with a joint tortfeasor. *Sanders*

v. *Ahmed*, 364 S.W.3d 195, 211 (Mo. banc 2012). It was enacted to ensure that an injured person does not obtain more than one satisfaction for the same wrong. *Id.* at 213 (citing *State ex rel. Normandy Orthopedics, Inc. v. Crandall*, 581 S.W.2d 829, 831 n. 1 (Mo. banc 1979)).

personal finances. The jury returned a verdict for $700,000 in punitive damages.

Markeson filed several post-trial motions, all of which were denied. The timing and substance of those motions and the court's rulings on them are critical to the resolution of this appeal. Shortly after the verdict, on July 2, Markeson filed a "Motion to Reduce the Verdict," in which she sought a reduction of $475,000 because the verdict did not reflect the reduction for the prior settlement, as required by section 537.060. Markeson also filed her amended answer on that same day. It included, as an affirmative defense, her right to a reduction under section 537.060. On July 5, Markeson filed a "Motion for Remittitur" seeking a reduction in the amount of punitive damages on the basis that the awarded amount was excessive.

On July 9, the court entered its "Judgment" in favor of Payne for $350,000 in compensatory damages and $700,000 in punitive damages. The Judgment did not include a reduction for the $475,000 pretrial settlement amount; nor did it rule on Markeson's claims to a section 537.060 reduction in that amount. Markeson filed her "Motion for New Trial and Motion to Amend the Judgment" on July 31, again seeking a reduction in the judgment in the amount of $475,000, pursuant to section 537.060.

On September 17, the circuit court issued an Order denying both Markeson's and Payne's motions for new trial[3] and denying Markeson's Motion for Remittitur. The court did not rule on Markeson's Motion to Reduce the Verdict but set it for a hearing on October 12, 2012.

At the October 12 hearing, Payne's counsel raised the issue of whether the circuit court still had jurisdiction to rule on the motion. Markeson's counsel stated that she was not prepared for argument on that issue. The court requested that the parties brief the issue and rescheduled the hearing for October 15. On October 15, after the parties presented their arguments, the circuit court told the parties that it had intended to provide Markeson the reduction but that due to the passage of time, the court no longer had jurisdiction over the case and the motion to reduce the verdict could not be granted.

On October 18, the circuit court entered its ruling on the Motion to Reduce the Verdict. The court stated that it had considered the arguments of counsel on the issue of whether the court lacked jurisdiction and had "determined that due to the time constraints set forth in the Rules, the Court lacked jurisdiction to rule on the Motion to Reduce the Verdict." The court also found that it lacked jurisdiction to rule on Markeson's Motion to Reconsider and/or Modify the Judgment, which she had filed the day before.

The court also denied Markeson's "Motion for Order Nunc Pro Tunc," which she had filed on October 22, again seeking a reduction for the $475,000 settlement amount. Markeson filed her Notice of Appeal on October 24, 2012.

### Discussion

 In Markeson's first three points on appeal, her primary contention is that the circuit court erred in denying her Motion to Reduce the Verdict on the basis that it lacked jurisdiction.[4] In Point I, she

---

3. Payne had filed a motion for new trial on July 26, claiming that the compensatory award was against the weight of the evidence.

4. In her reply brief, the Appellant claims that the circuit court's Judgment was not final because the court did not rule on the motion to reduce the verdict. She contends that this court, therefore, lacks authority to consider

argues that the circuit court erred in denying her Motion to Reduce the Verdict because it was actually a "motion to amend the judgment" under Rule 78.04,[5] and, thus, was an authorized post-trial motion that extended the court's jurisdiction to October 29. The question of whether a circuit court has jurisdiction over a case is purely a question of law that this court reviews *de novo*. *McCracken v. Wal–Mart Stores East, LP*, 298 S.W.3d 473, 476 (Mo. banc 2009).

Various Missouri Supreme Court Rules enter into the determination of when a judgment becomes final such that the circuit court loses jurisdiction. Under Rule 75.01, the circuit court retains control over a judgment for thirty days to vacate, reopen, correct, amend, or modify the judgment for good cause. A motion for new trial or motion to amend the judgment must be filed before the expiration of that thirty-day period. Rule 78.04. If no authorized after-trial motion is filed within that time period, the judgment becomes final thirty days after entry of the judg-

ment. Rule 81.05(a)(1). "If a party timely files an authorized after-trial motion," then the judgment becomes final at the earlier of:

(A) Ninety days from the *date the last timely motion was filed,* on which date *all motions not ruled shall be deemed overruled* [under Rule 78.06]; or

(B) If all motions have been ruled, then the *date of ruling of the last motion to be ruled* or thirty days after entry of judgment, whichever is later.

Rule 81.05(a)(2) (emphasis added). Under Rule 78.06, an after-trial motion "is overruled for all purposes if the trial court does not rule on it within ninety days after the date the last such timely motion is filed."

Rules 81.05(a)(2) and 78.06 both indicate that the court retains jurisdiction to rule on any authorized after-trial motion for ninety days from the date the last such motion was filed (even if the last-filed motion has already been ruled upon).[6] *See*

the case and the appeal must be dismissed, citing *ABB, Inc. v. Securitas Security Services USA, Inc.*, 390 S.W.3d 196, 200 (Mo.App. 2012); *Melson v. Traxler*, 356 S.W.3d 264, 268 n. 9 (Mo.App.2011); and § 512.020(5), RSMo. We disagree. As explained in Rule 74.01(a), " 'Judgment' as used in these rules includes a decree and any order from which an appeal lies. A judgment is rendered when entered. A judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed." Here, the court ought to have held a hearing on the reduction issue before it issued the original Judgment and erred in concluding it had lost jurisdiction to rule on the motion when it did hold the hearing. Nevertheless, the Judgment issued on July 9 was a final, appealable judgment pursuant to Rule 74.01(a).

In *Daniel v. Indiana Mills & Manufacturing, Inc.*, the court opined in a footnote: "Arguably, absent the trial court having found no just reason for delay in rendering judgment in this case, the unresolved [Motion to Determine Credit for Settlement Proceeds] might

have precluded finality of judgment for purposes of appeal." 103 S.W.3d 302, 318 n. 7 (Mo.App.2003) (citing Rule 74.01(b)). We would be more amenable to the Appellant's argument had the circuit court not attempted to address the reduction issue at the post-trial hearing and found (erroneously) that it had lost jurisdiction to rule on the motion.

5. All rule references are to Missouri Supreme Court Rules (2012), unless otherwise noted.

6. As explained in the Missouri Practice Series discussion of Rule 78.06: "[T]he trial court [does not] have to rule on all motions, even those by a single party, at the same time. Rather, the court may rule on separate after-trial motions at separate times and continues *to have jurisdiction to act so long as it decides* all such motions within 90 days from the date that the last timely after-trial motion was filed." 17 MOPRAC § 78.06:1 (4th ed.) (footnotes omitted).

With regard to Rule 81.05, the Practice Series states: "As amended in 1999, [Rule]

*Seitz v. Seitz,* 107 S.W.3d 478, 489 (Mo. App.2003) (holding that under Rules 78.06 and 81.05(a)(2)(B), all after-trial motions not previously ruled are deemed overruled ninety days after the date the last after-trial motion was filed; at that point, the circuit court no longer has jurisdiction to act in the case).

■ Markeson contends that because the *last* after-trial motion was filed on July 31, the court had jurisdiction to rule on any *authorized* post-trial motion, including her motion to reduce the verdict, until October 29, 2012, citing Rule 78.06. *See also* Rule 81.05(a)(2). She contends that the court therefore erred in finding that it lacked jurisdiction to rule on her motion at the October 15 hearing. We agree.

In applying the Rules to the relevant facts, we see that the last timely filed authorized after-trial motion (Markeson's motion for new trial and to amend the judgment) was filed on July 31. Ninety days from that date was October 29. The hearing at which the court found it lacked jurisdiction was on October 15. Although the motion for new trial (the last timely motion) was ruled on September 17, 2012 (along with Payne's July 26 motion for new trial, and Markeson's earlier motion for remittitur), the court had not ruled on *all* the post-trial motions. It reserved ruling on the Motion to Reduce the Verdict until after it held a hearing on the matter, originally set for October 12.

Based on the plain language of Rules 81.05 and 78.06, we conclude that the cir-cuit court had not lost jurisdiction over the case at the time of the post-trial hearing. Rather, it retained jurisdiction to rule on any *authorized* post-trial motions until October 29 (ninety days after the last authorized after-trial motion was filed), regardless of the fact that it had already ruled on the last-filed motion. Accordingly, *if* the Motion to Reduce the Verdict was an "authorized" after-trial motion, then the circuit court had jurisdiction until October 29, to rule on it. The question, then, is whether Markeson's Motion to Reduce the Verdict was an *authorized* after-trial motion.

■ When the parties appeared for the October 12 hearing, Payne's counsel raised the issue of whether the circuit court still had jurisdiction to rule on the motion. He claimed, *inter alia*, that the Motion to Reduce the Verdict was not one of the six "authorized" after-trial motions that extend the court's jurisdiction over the case for ninety days. He stated that even if it did somehow extend the court's jurisdiction, the ninety days had expired because that motion was filed on July 2.[7] When the parties reappeared before the court on October 15, Payne's counsel raised the same arguments. Markeson's counsel argued that the motion was an "authorized" after-trial motion, noting that it is the substance of the motion and not the title that determines, and she claimed that the court had ninety days from the filing of the last-filed *authorized* after-trial motion (Markeson's motion for new trial, filed on July 31).

81.05(a)(2) now clearly controls those cases in which the parties file after-trial motions on different dates...." 17 MOPRAC § 81.05:4 (4th ed.). "Under paragraph (a)(2)(B), the trial court has a maximum period of 90 days from the date when the last motion was filed to decide all authorized after-trial motions. If the court does not act within that time period, all motions that have not been decided are deemed denied for all purposes...." *Id.* (footnotes omitted).

7. Rule 78.04 provides: "If the motion [for new trial or to amend the judgment] is filed prematurely, the motion shall be considered as filed immediately after the time the judgment is finally entered." Markeson's motion is thereby deemed to have been filed on July 9, 2012, the date the Judgment was entered.

Markeson claims that her motion was effectively a motion to amend the judgment under Rule 78.04. A "motion to amend" filed pursuant to Rule 78.04 is an authorized after-trial motion. *See Taylor v. United Parcel Serv., Inc.,* 854 S.W.2d 390, 392 n. 1 (Mo. banc 1993) (listing six authorized after-trial motions).[8] Missouri law authorizes the filing of several after-trial motions, including motions for new trial and motions to amend the judgment pursuant to Missouri Supreme Court Rule 78.04. *Id.; see also Massman Constr. Co. v. Mo. Highway & Transp. Comm'n,* 914 S.W.2d 801, 803 (Mo. banc 1996). A motion need not be formally designated a "motion to amend the judgment" or a "motion for new trial" to constitute a motion under Rule 78.04. *See Blue Ridge Bank and Trust Co. v. Hart,* 152 S.W.3d 420, 425 (Mo.App.2005). To the contrary, Missouri law requires the circuit court to treat motions based upon the allegations contained in the motion regardless of the motion's style or form. *Id.* Our Supreme Court has stated: "In determining whether a motion is an authorized after-trial motion, Missouri courts have looked not to the nomenclature employed by the parties, but to the actual relief requested in the motion." *Berger v. Cameron Mut. Ins. Co.,* 173 S.W.3d 639, 641 (Mo. banc 2005). In *Taylor,* 854 S.W.2d at 392–93, for example, the court held that a "Motion to Reconsider the Order of the Court Granting Defendant's Motion for Summary Judgment"

was appropriately treated as a motion for new trial "despite its odd style" because it alleged that the circuit court committed an error of law. In *Massman,* 914 S.W.2d at 803, where the court recognized a "general tendency of courts to construe improperly titled or crudely fashioned after-trial motions liberally as motions for new trial," a "Motion to Increase the Jury Award" was found to be substantively a motion for additur, an authorized after-trial motion. Subsequent cases have reaffirmed these principles. *See, e.g., State ex rel. Mo. Parks Ass'n v. Mo. Dep't of Natural Res.,* 316 S.W.3d 375, 382 (Mo.App.2010) ("[i]n evaluating whether a pleading is an authorized after-trial motion," we do not concern ourselves with the title or with citation to a particular Rule, "but we look instead to the substance of the pleading").

Markeson's "Motion to Reduce the Verdict" sets forth the facts applicable to the settlement agreement and the law pertaining to a section 537.060 reduction. It claims that there was a settlement agreement to which section 537.060 would apply and states that "the jury's verdict should be reduced to reflect the prior settlement between Plaintiff and Defendant MM Investments." The foregoing cases, and others, support Markeson's claim that the motion was an authorized after-trial motion to amend. In *McGuire v. Kenoma, LLC,* 375 S.W.3d 157, 179–82 (Mo.App.2012), for example, the defendant filed an after-trial motion seeking a reduction of the verdict

---

8. *Taylor's* list of six authorized after-trial motions includes:

> [A] motion to dismiss without prejudice after the introduction of evidence is commenced under Rule 67.01; a motion for a directed verdict under Rule 72.01(a); a motion for judgment notwithstanding the verdict under Rule 72.01(b); a motion to amend the judgment [under Rule 78.04]; a motion for relief from judgment or order under Rule 74.06(a) and (b) ...; and a motion for a new trial under Rule 78.

854 S.W.2d at 392 n. 1. In *Massman Constr. Co. v. Mo. Highway & Transp. Comm'n,* 914 S.W.2d 801, 803 (Mo. banc 1996), our Supreme Court rejected a claim that an authorized after-trial motion is limited to the six types listed in *Taylor,* holding that a motion for additur constituted an "authorized after-trial motion" as well. Later, in *Sanders v. National R.R. Passenger Corp.,* 930 S.W.2d 36, 40, n. 2 (Mo.App.1996), the court described a motion for remittitur as an authorized after-trial motion.

amounts pursuant to section 537.060, which this court referred to and treated as a "Motion to Amend the Judgment." *See also Mo. Parks Ass'n*, 316 S.W.3d at 382 (where a "Motion to Clarify the Judgment" alleged errors in the judgment's language, the court found it was "tantamount to a motion to amend the judgment"); *Blue Ridge Bank*, 152 S.W.3d at 424–25 (held that a "Motion to Amend and Reconsider Judgment" need not cite any rule or statute to be an authorized after-trial motion, overruling opinions to the contrary, and that the motion qualified as a motion to amend because it alleged errors in the judgment language).

We conclude, under the circumstances in this case, including the content of the motion to reduce the verdict and the relief sought therein, that the motion was effectively an authorized post-trial *motion to amend* under Rule 78.04.[9] For that reason, and because the ninety days from July 31 had not yet expired, the circuit court maintained jurisdiction to rule on the motion on October 15, 2012. Thus, the circuit court's ruling of October 18, 2012, which concluded that the court lacked jurisdiction to conduct the hearing and rule on the motion was erroneous.

Point I is granted.[10]

---

**9.** We disagree with Payne's assertion that the motion to reduce the verdict was more akin to the motions that were found not to be "authorized" after-trial motions in *Glandon v. Daimler Chrysler Corp.*, 142 S.W.3d 174 (Mo. App.2004) (motion for attorneys' fees), and *Anderson v. Shelter Mut. Ins. Co.*, 127 S.W.3d 698 (Mo.App.2004) (motion for pre-judgment interest). Those motions concerned matters that were incidental to the judgment. The motion at issue in this case alleged that there was an error in the judgment itself in that it did not reflect the required reduction for the co-defendant's settlement payment. As explained above, we find that this motion constituted a motion to amend the judgment be-

### Proper Procedure

◼ We reject Payne's contention that Markeson failed to properly "plead and prove" her affirmative defense of reduction. The statutory basis for Markeson's claim, section 537.060, provides, in relevant part:

When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tortfeasors for the damage unless the terms of the agreement so provide; however *such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater.*

§ 537.060, RSMo (emphasis added). The statute "implements the common law rule that a plaintiff is entitled to one satisfaction for a wrong." *Gibson v. City of St. Louis*, 349 S.W.3d 460, 465 (Mo.App.2011).

◼ We start our analysis "by considering the procedure that leads to a ruling under section 537.060." *See id.* "A reduction under section 537.060 is a satisfaction of an amount owed," and "[s]atisfaction is an affirmative defense" which "must be pleaded and proved." *Norman v. Wright*, 100 S.W.3d 783, 785 (Mo. banc 2003). "The defendant bears the burden

---

cause it sought to correct the court's mistake in not applying the section 537.060 reduction to the Judgment. *See, e.g., McGuire*, 375 S.W.3d at 179–83; *see also Massman Constr.*, 914 S.W.2d at 803 (holding that a motion for additur is an "authorized after-trial motion" and noting that "[t]he purpose of additur, like remittitur, is not to correct juror bias and prejudice, but to correct a jury's honest mistake in fixing damages.").

**10.** This determination makes it unnecessary for us to address Markeson's Points II, III, and V.

of pleading and proving the elements of the defense." *Sanders v. Ahmed*, 364 S.W.3d 195, 211 (Mo. banc 2012). Those elements are: (1) the existence of a settlement, and (2) the stipulated amount of the agreement or the amount in fact paid. *Id.* at 211–12.

Markeson followed the proper procedures to have the jury's verdict reduced by the amount of her co-defendant's prior settlement agreement pursuant to section 537.060. Prior to trial, Markeson's co-defendant, MM Investments, and Payne reached an agreement under which MM Investments agreed to pay Payne $475,000 in exchange for being dismissed from the case. After the court dismissed MM Investments, but before the start of trial, Markeson filed a motion for leave to file an amended answer to include an affirmative defense for a reduction in the amount of the settlement, pursuant to section 537.060. Markeson attached a copy of the amended answer that she proposed to file. On June 12, 2012, Markeson filed a separate "Motion for Reduction or Set–Off." That motion informed the court of the exact amount of the settlement agreement, stating: "Defendant only recently learned that Defendant MM Investments, LLC, paid $475,000.00 to Plaintiff as part of a settlement agreement with regard to injuries she claims as a result of the September 3, 2009 accident." The purpose of pleadings is to "present, define, and isolate the issues, so that the trial court and all parties have notice of the issues." *Norman*, 100 S.W.3d at 786. Here, the judge and the parties were aware of the facts surrounding the settlement agreement, including the amount, at least as of June 12, 2012.

At a June 15 pre-trial hearing, the circuit court granted Markeson's motion to file an amended answer after finding that Payne would not be prejudiced if Markeson were allowed to amend her answer to include the proposed affirmative defense. The court denied Markeson's separate Motion for Reduction or Set–Off as moot.

Shortly after the June 27 verdict, Markeson filed her amended answer raising the affirmative defense of reduction pursuant to section 537.060. On the same day, she filed a "Motion to Reduce the Verdict" by the $475,000 settlement amount between Payne and MM Investments, again citing section 537.060. Payne filed suggestions in opposition raising a public policy argument that because Markeson was intoxicated at the time of the accident, she should not be permitted to benefit from money paid by the bar under a statutory "Dram Shop" claim.

On July 9, 2012, the trial court entered a Judgment for the full amount of the jury's verdict. Markeson then filed a "Motion for New Trial and Motion to Amend the Judgment" on July 31, again raising the section 537.060 reduction issue.

In *McGuire*, 375 S.W.3d at 181, this court held that a claim for reduction was properly raised as an affirmative defense in the defendant's amended answer. We rejected the plaintiffs' contention that "set off [reduction] is never properly raised after verdict," noting that the plaintiffs "fail to cite any authority that actually so holds." *Id.* The *McGuire* court stated that the case cited by the plaintiffs, *Norman v. Wright*, was "easily distinguishable," in that "the issue of reduction under section 537.060 was not raised by the pleadings" in *Norman.*[11] *Id.* (citing *Norman v. Wright*, 100 S.W.3d at 785–86). The *McGuire*

---

11. The same is true in another case cited by Payne, *CADCO Inc. v. Fleetwood Enterprises, Inc.*, 220 S.W.3d 426, 440–41 (Mo.App.2007), where the defendant made no motion or request to amend the pleadings prior to the verdict.

court explained that "*Norman* simply clarified that a party cannot raise a reduction issue after trial if that party failed to raise the affirmative defense in its responsive pleading." *Id.* at 181 n. 19.

*Norman* is distinguishable from our case for the same reason. Markeson filed her motion to amend her answer before the trial began and attached a copy of her proposed amended answer. The Plaintiff was not prejudiced by Markeson's failure to file the amended answer until after the verdict. *See McGuire,* 375 S.W.3d at 181 (noting that the plaintiffs "cannot argue that the facts necessary to support the affirmative defense were unknown to them, as they are the ones who entered into the settlement with the other joint tortfeasors. The facts and terms of the settlements were more fully available to the [p]laintiffs than they were to [the defendant].")." The circuit court specifically found that Payne would not be prejudiced by granting Markeson leave to amend her answer. Moreover, at the October 12 post-trial motion hearing, counsel for Payne stated: "I told [Markeson's counsel] before trial that it was unnecessary to do a deposition or anything that I would tell the Court that there was a prior payment from the bar on the Dram Shop claim, $475,000. I told her that, so I'm here telling the Court that." Clearly, the court and the parties were aware of "the existence of a settlement" and "the stipulated amount of the agreement or the amount in fact paid."

Markeson satisfied her burden to establish the elements of the defense. *See Sanders,* 364 S.W.3d at 211–12.

 We also reject the contention that Markeson failed to properly "prove" her reduction claim at trial.[12] In its September 17 Order, the circuit court set a hearing on the reduction issue for October 12, 2012. Scheduling a hearing on the undisputed prior settlement payment outside the hearing of the jury was the appropriate procedure for handling the reduction issue in this case. *See Hoover v. Brundage–Bone Concrete Pumping, Inc.,* 193 S.W.3d 867, 872 (Mo.App.2006). The applicable Missouri Approved Instruction states: "No instruction shall be given directing the jury to credit its verdict with the amount of any advance payment or partial settlement." MAI 1.06 (6th ed.2002).[13] The Committee Comment to MAI 1.06 sets forth the proper procedure for dealing with prior settlement payments:

> [T]he parties should make a record out of the hearing of the jury regarding undisputed prior settlement payments made either as an advancement by the defendant or as a partial settlement payment by a joint tort-feasor. The trial judge, as a matter of law, then will take any prior payments into consideration and will credit them on the damages assessed by the jury's verdict as required by law.

**12.** In one of the cases Payne relies upon, *Ozark Air Lines, Inc. v. Valley Oil Co., L.L.C.,* 239 S.W.3d 140, 145 (Mo.App.2007), the appellate court found that the defendant failed to prove its affirmative defense of reduction at trial because the action contained both tort and contract claims and the jury awarded one verdict as to all the claims; thus, the court could not properly determine how to apply the reduction only to the tort claims. Here, in contrast, the Plaintiff raised only a tort claim.

**13.** The 2012 revision to MAI 1.06 clarifies that "No instruction shall be given directing the jury to credit its verdict with the amount of any *undisputed* advance payment or partial settlement." MAI 1.06 (7th ed.2012) (emphasis added). Even before this revision, the fact that the instruction applied only to *undisputed* advance payments or partial settlements was clear from the text of the Committee Comment (as explained above).

*Gibson*, 349 S.W.3d at 465; *Hoover*, 193 S.W.3d at 872. Where there is no dispute as to prior settlement payments, plaintiffs are not entitled to have the issue submitted to the jury. *Hoover*, 193 S.W.3d at 872. In *Walihan v. St. Louis–Clayton Orthopedic Group, Inc.*, 849 S.W.2d 177, 182 (Mo.App.1993), the court explained that where the facts pertaining to the settlement agreement are not disputed, "it is the function of the trial court to reduce the amount recovered by the amount of the settlement and no instruction is given to the jury." *See also Gibson*, 349 S.W.3d at 465.

On the other hand, "if there is a disputed issue about whether there was a settlement payment, about whether a certain payment was attributable to a settlement, or about the amount of a settlement payment, 'this issue is submitted to the jury by modifying the damage instruction as required by MAI 7.02 and using Form of Verdict MAI 36.19.'" *Gibson*, 349 S.W.3d at 465 (quoting MAI 1.06, Committee Comment). These specific issues were not at dispute in this case, and, thus, the reduction issue should have been determined by the court and not the jury.

In *McGuire*, the court rejected the plaintiffs' claim that the reduction issue must be proven before the jury, and that

this issue was somehow waived because the defendant "never attempted to prove [the] affirmative defense at trial." 375 S.W.3d at 182. The court observed that the "plaintiffs fail to address that Missouri law holds that this specific reduction issue was not a proper jury issue in light of the fact that Plaintiffs do not dispute that the settlements at issue in fact occurred[.]" *Id.* We concluded that it, therefore, "was up to the trial judge to compute the credit." *Id.* at 183.[14]

Here, where the circuit court issued its Judgment on July 9 before it had resolved Markeson's claims for a reduction pursuant to section 537.060, the better practice would have been to withhold issuing the Judgment until that issue had been resolved. Nevertheless, the circuit court attempted to resolve the issue at a post-trial hearing, but was persuaded (erroneously) that it had lost jurisdiction to rule on it at that time.

When the parties appeared for the October 12 hearing, Payne's counsel raised the issue of whether the circuit court still had jurisdiction to rule on the motion. The parties reappeared before the court on October 15 and presented arguments on that issue. Counsel for Payne acknowledged, both on October 12 and again on

**14.** This court ultimately held in *McGuire*, 375 S.W.3d at 183, that the circuit court erred in denying a motion to reduce the verdict pursuant to section 537.060, and we ordered the correct relief pursuant to Rule 84.14. That avenue is unavailable here, however, because both parties have raised issues that needed to be addressed in connection with the reduction claim. Those issues include: (1) whether, on statutory or public policy grounds, section 537.060 is inapplicable in this case given that the settling co-defendant faced dram-shop liability under section 537.053.2, RSMo; (2) whether the $475,000 settlement can be applied to reduce the punitive damages award; and (3) whether Payne is entitled to an award of punitive damages, since the actual damages award would be entirely eliminated by the reduction amount. Although these are questions of law for the court, rather than issues that would be submitted to a jury, they have not been fully briefed by the parties in this Court, and we therefore deem it inadvisable to decide them in the first instance. We note that, at oral argument, Markeson's counsel abandoned her claim that the settlement reduction could be applied to reduce the jury's punitive damage award. We also note that the limitations on punitive damages found in section 510.265.1, RSMo, are inapplicable here, since Markeson pleaded guilty to "a felony arising out of the acts or omissions pled by the plaintiff."

October 15, the settlement agreement with MM Investments. Following the arguments, the circuit court told the parties that it had intended to provide Markeson the reduction but that due to the passage of time, the court no longer had jurisdiction over the case and the Motion to Reduce the Verdict could not be granted.

On October 18, the circuit court entered its ruling on the Motion to Reduce the Verdict and on the Motion to Reconsider and/or Modify the Judgment (which Markeson had filed the day before). The court stated that it had considered the arguments of counsel and "determined that due to the time constraints set forth in the Rules" it had lost jurisdiction to rule on the motions.

As we have explained, however, the circuit court retained jurisdiction over the case to rule on the Motion to Reduce the Verdict at the October 15 hearing—and to grant the motion—until October 29. As stated, the circuit court ought not have entered its Judgment for the full amount of the jury's verdict on July 9, 2012, without first section 537.060 reduction. But, having done so, the circuit court properly scheduled the post-trial motion for a hearing, as described in the Committee Comment to MAI 1.06. We conclude that the circuit court erred as a matter of law in failing to dispose of the properly and timely presented issue of what, if any, reduction the Appellant may have been entitled to pursuant to section 537.060.

Accordingly, we reverse the judgment and remand for the circuit court to properly address the reduction issue and to conduct the hearing that it intended to conduct before it erroneously concluded that it had lost jurisdiction in the case.

### Motion for Remittitur

■ In Point IV, Markeson argues that the circuit court erred in denying her Motion for Remittitur as to the punitive damages, in that it failed to review the verdict to ensure that it was not excessive. She contends that the jury's punitive damages award was the result of "passion and prejudice" and was so excessive that it violated due process.

■ Under section 537.068, RSMo, the circuit court may order remittitur "if, after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." We review the circuit court's denial of a motion for remittitur for an abuse of discretion, and we consider the evidence in the light most favorable to the verdict. *Badahman v. Catering St. Louis,* 395 S.W.3d 29, 39 (Mo. banc 2013).

■ Section 510.263.6 applies the doctrine of remittitur to punitive damage awards. The assessment of punitive damages is peculiarly committed to the discretion of the jury and the circuit court, and appellate courts will interfere only in extreme cases. *Henderson v. Fields,* 68 S.W.3d 455, 487 (Mo.App.2001). Both the circuit court and the appellate court review a jury's award of punitive damages for an abuse of discretion. *Call v. Heard,* 925 S.W.2d 840, 849 (Mo. banc 1996). An abuse of discretion is established when the size of the punitive award is so disproportionate to the relevant factors that it reveals "improper motives or a clear absence of the honest exercise of judgment." *Id.* (citations omitted). We will reduce a punitive damages verdict only if the amount is "manifestly unjust." *Henderson,* 68 S.W.3d at 487.

■ The purpose of punitive damages is to punish and to deter similar conduct by others. *Call,* 925 S.W.2d at 849. The

United States Supreme Court has set forth three factors for courts to consider to ensure that a punitive damage award is not so "grossly excessive" in relation to the interests of punishment and deterrence that it enters into the "zone of arbitrariness" that violates the Due Process Clause. *Krysa v. Payne,* 176 S.W.3d 150, 155–56 (Mo.App.2005); *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Those factors are: (1) the degree of reprehensibility; (2) the disparity between the harm suffered and the punitive damage award; and (3) the difference between the award and civil penalties authorized or imposed in similar cases. *Krysa,* 176 S.W.3d at 156.

Markeson sets forth these factors in her argument, as well as additional factors that the courts in Missouri have considered,[15] but she then fails to apply them. She relies almost exclusively on her testimony about the punishment she suffered as a result of the criminal charges. She spent nearly two years in prison, lost her driver's license for ten years, must serve probation for two years, and faces an additional ten years in prison if she gets arrested for DUI again. In *Henderson,* 68 S.W.3d at 487–88, this court rejected an argument that no punitive damages should be awarded where the defendant has been punished criminally. Markeson also points to her dire financial situation: she currently makes $7.50 per hour and has no assets, and her net worth is between -$50,000 and -$60,000.

In considering the degree of reprehensibility, we note that Markeson was driving with a blood alcohol level of .166 when she crossed the centerline and collided with Payne's vehicle and that she was on probation for a prior DUI at the time. In a case of negligence, punitive damages may be awarded "if the defendant knew or had reason to know of the high probability that his actions would result in injury." *Call,* 925 S.W.2d at 852. The evidence showed that, as a requirement of her probation, Markeson had attended classes where she learned about the physical effects of alcohol and the dangers of drinking and driving. Nevertheless, she continued to drink and drive on an on-going basis in the months leading up to the accident. It has been stated that "repeated misconduct is more reprehensible than an individual instance of malfeasance, and, therefore, a recidivist may be punished more severely than a first offender." *Krysa,* 176 S.W.3d at 159 (internal quotations and citations omitted). Markeson's repeated drinking and driving, despite being on probation for a DUI, and her erratic driving at the time of the accident, demonstrate a degree of reprehensibility that is sufficient to support the jury's punitive damage award. *See Call,* 925 S.W.2d at 852; *Henderson,* 68 S.W.3d at 488 (each affirming a punitive damages award in a drunken-driving wrongful death case).

With regard to Payne's suffering, the evidence showed that as a result of the collision, Payne was pinned in her car and had to be cut out. The doctor who treated her testified that Payne suffered a severe fracture of her ankle, a dislocated fracture of the fibula, multiple fractures of the left femur and damage to the muscle around the femur, as well as a fracture and articular cartilage damage to her wrist. She will have permanent pain and limitation of mo-

**15.** Missouri courts have considered the following additional factors: (1) the degree of malice or outrageousness of defendant's conduct; (2) defendant's financial status; (3) the character of both parties; (4) the injury suffered; (5) defendant's standing or intelligence; (6) the age of the injured party; and (7) the relationship between the two parties. *Smith v. Brown & Williamson Tobacco Corp.,* 275 S.W.3d 748, 811 (Mo.App.2008).

tion and has permanent scars. She is no longer able to work at her former job. She could not work at any job for a year and lost approximately $22,250 in wages. Her medical bills were $118,857.91. Markeson does not persuade us that the jury's award of $350,000 in compensatory damages and $700,000 in punitive damages was disproportionate to the harm that Payne suffered.

Markeson presents no evidence that the punitive damage award in this case was out of line with awards in similar cases. Payne cites comparable cases in which the punitive awards were much higher: *Call,* 925 S.W.2d at 844, and *Henderson,* 68 S.W.3d at 488, where the courts affirmed punitive awards of $9.5 million and $4.5 million, respectively, in those drunken-driving accident cases. The *Henderson* court noted that our courts have affirmed punitive damage awards where the ratio between punitive damages and compensatory damages were 4:1 and 10:1. 68 S.W.3d at 488. The punitive damages award here, at two times the amount of the compensatory damages, is in line with comparable cases.[16]

Viewed in the light most favorable to the verdict, as our standard of review requires, the evidence pertinent to these issues demonstrates that the court did not abuse its discretion in denying the motion for remittitur. This point is denied.

### Respondent's Arguments for Dismissal

Payne raises three arguments as to why this appeal should be dismissed. She claims that the appeal presents nothing for our review because Markeson does not seek review of the circuit court's Judg-

ment but, rather, of the denial of her post-trial motions. She cites *Pittman v. Reynolds,* 679 S.W.2d 892, 893 (Mo.App.1984), for the proposition that no review lies from the denial of a post-trial motion and that such an appeal presents nothing for review. The *Pittman* court also noted, however, that some courts have granted review *ex gratia* where the appellant made a "good faith attempt" in her brief to present issues contesting the judgment. *Id.* As is clear from the foregoing discussion, we find that Markeson has presented issues contesting the judgment. Payne also says the appeal should be dismissed because Markeson's brief fails to comply with Rule 84.04 briefing rules, particularly those that require references to the record. Appellate courts prefer to resolve an appeal on the merits of a case rather than to dismiss an appeal for deficiencies in the brief. *See Maskill v. Cummins,* 397 S.W.3d 27, 31 (Mo.App.2013). Despite any deficiencies, we are able to ascertain Markeson's arguments from her brief; thus, we elect to review her claims *ex gratia* to provide a determination on the merits.

Payne also contends that this court lacks jurisdiction to hear the appeal because Markeson's Notice of Appeal was untimely, in that it was filed more than ten days after the Judgment became final. Rule 81.04(a) requires a notice of appeal to be filed "not later than 10 days after the judgment or order appealed from becomes final." "Timely filing of a notice of appeal is jurisdictional." *Berger,* 173 S.W.3d at 640. This issue is resolved by our finding that the circuit court retained jurisdiction over the case until October 29, and entered

**16.** The award also would be in line with the statutory limitation on punitive damages in section 510.265.1, RSMo, which provides that no punitive damages award "shall exceed the greater of: (1) Five hundred thousand dollars; or (2) Five times the net amount of the judgment awarded to the plaintiff[,]" but, as explained in footnote 14, *supra,* that limitation is not applicable here.

a judgment denying Markeson's motion to reduce the verdict based on a lack of jurisdiction on October 18. Markeson's filing of her notice of appeal on October 24 was timely.

### Conclusion

Based on the foregoing, we conclude that the circuit court erred in not considering Markeson's Motion to Reduce the Verdict at the October 15 hearing after erroneously finding that it lacked jurisdiction over the case. Consequently, we reverse the circuit court's judgment and remand for the circuit court to consider the Appellant's Motion to Reduce the Verdict. We affirm the punitive damages award.

All concur.

